2004 VT 53

## In re Appeal of McEwing Services, LLC

[857 A.2d 299]

No. 03-078

Present: Amestoy, C.J., Johnson, Skoglund and Reiber, JJ., and Gibson, J. (Ret.), Specially Assigned

Opinion Filed June 18, 2004

*Daniel P. O'Rourke* of *Bergeron, Paradis & Fitzpatrick, LLP,* Essex Junction, for Appellant.

*Paul S. Gillies,* Montpelier, for Appellee.

¶ 1. **Johnson, J.** The Town of Moretown Development Review Board denied appellant, McEwing Services, LLC, a conditional use permit for the construction of a telecommunications tower after four months of deliberations. McEwing appealed to the Vermont Environmental Court claiming that the permit was deemed approved, pursuant to 24 V.S.A. § 4407(2) and town zoning regulations, on January 28, 2002 — sixty days after the board held the final duly noticed public hearing on the application. The town countered that the sixty-day deemed approval period did not begin to run until the board "closed the evidence," and because the board did not announce closure of the evidence until April 3, its April 10 decision was timely and effective to deny McEwing's application. The environmental court granted summary judgment in favor of the town. We reverse.

¶ 2. Pursuant to the Legislature's grant of authority, the Town of Moretown has adopted municipal zoning regulations. See 24 V.S.A. § 4407 ("Any municipality may adopt zoning regulations . . . ."); see also Town of Moretown, Vermont Zoning Regulations § 1.1 (March 7, 2000) (recognizing legislative grant of authority to adopt regulations). Moretown's zoning regulations divide the town into five zoning districts. Town of Moretown, Vermont Zoning Regulations § 2.1; see also 24 V.S.A. § 4407(1) (allowing for the creation of zoning districts). Under § 4407(2) and § 5.2 of the town's zoning regulations, certain uses, known as "conditional uses," may be permitted only by approval of the town's development review board. Both the statute and the regulation require that the board hold a public hearing to gather evidence and allow for public comment on the application. 24 V.S.A. §§ 4407(2), 4467; Moretown Zoning Regulations § 5.2(B). After the final public hearing on the proposed conditional use occurs, the board then has sixty days to render its decision; failure to act within the sixty-day period results in deemed approval of the application. 24 V.S.A. § 4407(2); Moretown Zoning Regulations § 5.2(B).

¶ 3. On September 27, 2001, McEwing applied to the board for conditional use approval to construct a wireless telecommunications tower and a parking area on leased land located within the town's commercial district. The board held the first duly noticed public hearing on the McEwing application on October 30, 2001. Representa-

tives from McEwing, various telecommunications companies interested in the project, members of the public, and one of the leased land's owners attended the meeting. After questioning McEwing representatives about certain aspects of the project, the board moved to go into a closed "deliberative session." At that time, the board informed McEwing that it was not "closing the evidence," and that McEwing might be asked to reappear before the board and submit additional evidence. During the deliberative session, the board voted to continue the matter to November 28, 2001 and to write to McEwing seeking more information.

¶ 4. On November 2, the board wrote a letter to McEwing requesting more information about various aspects of the application and the underlying lease provisions for the project. McEwing provided the requested information by letter prior to the November 28 hearing. McEwing representatives attended the November 28 public hearing on its application. The board accepted the additional information submitted by McEwing during the public portion of the hearing. Before going into deliberative session again, the board advised McEwing that additional evidence might be requested. Despite this statement, the board did not subsequently request anything further from McEwing. At the conclusion of the deliberative session, the board again moved to continue for further deliberations.

¶ 5. McEwing's was not the only telecommunications tower application considered by the board at the November 28 meeting. The board questioned and received evidence from representatives for two other applicants and took public comment on those applications as well.

¶ 6. The board conducted a number of deliberative sessions on McEwing's application. The first of these occurred on December 19. During the deliberative session, the board considered a motion to consolidate the three pending tower applications, but concluded that "it must resolve each application separately on [its] respective merits." The board again determined to continue the deliberative session to January 9, 2002 when two hearings were scheduled on other applications, including one for a fourth tower application. The minutes indicate that the "[b]oard does not expect to make substantial progress on deliberations that evening and will likely continue the three pending matters for further deliberation or evidentiary hearing in late January or early February."

¶ 7. A series of additional deliberative sessions followed without any resolution of McEwing's application, solicitation of additional evidence from McEwing, or comment from the public on its application. These

occurred on January 30, February 13, February 27, March 13 and March 21.

¶ 8. On February 12, 2002, McEwing sent a letter to the board indicating that it had secured a commitment from another telecommunications company to use the facility in the event that the board approved the application. The letter also included a photographic simulation of the tower that McEwing hoped to build. Though the board had not requested the information, it accepted the letter into evidence at the hearing the following day. The minutes indicate that the subject of the February 13 hearing was a subdivision application unrelated to any of the four telecommunication tower applications. No McEwing representatives attended the meeting. Nonetheless, the board circulated the McEwing letter before entering into deliberative session.

¶ 9. On April 3, 2002, the board voted to "close the evidence" on all of the telecommunications tower applications including McEwing's. In a decision dated April 10, 2002, the board voted to deny McEwing's application. The board concluded that (1) telecommunications facilities are neither permitted nor conditional uses in the commercial district where McEwing's proposed facility would be located, and (2) the lot size for the project did not satisfy the minimum requirements for uses within the commercial district.

¶ 10. McEwing appealed the decision to the environmental court, arguing that its application was approved by operation of law by virtue of the board's failure to render a decision within sixty days after November 28, 2001, the date of the final noticed public hearing on McEwing's application. Both parties moved for summary judgment, and the court ruled in favor of the town, holding that the board avoided the application of the statute by continuing its deliberative sessions and making clear to McEwing that it had not "closed the evidence" on its application. The court ruled that the board's April 10 decision was within the sixty-day period when measured from April 3, the date the board pronounced the evidence closed. The court further held that the board's decision was timely even if measured from February 13 — the date when the board accepted, during a public hearing on other matters, the letter and photograph that McEwing had voluntarily submitted to it the previous day. In the court's view, this submission, coupled with McEwing's failure to demand a prompt decision from the board, amounted to a waiver of the deemed approval remedy. We disagree.

¶ 11. We review the decision on a motion for summary judgment using the same standard as the environmental court. See *In re Jackson*, 2003 VT 45, ¶ 11, 175 Vt. 304, 830 A.2d 685. Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Springfield Hydroelec. Co. v. Copp*, 172 Vt. 311, 313, 779 A.2d 67, 70 (2001); V.R.C.P. 56(c).

¶ 12. This case requires application of the Vermont Planning and Development Act and the deemed approval remedy it provides. As it pertains to conditional use applications such as McEwing's, the act states that "the development review board shall act to approve or disapprove any such requested conditional use within sixty days after the date of the final public hearing held under this section, and failure to so act within such period shall be deemed approval." 24 V.S.A. § 4407(2); see also Town of Moretown, Vermont Zoning Regulations § 5.2(B) (March 7, 2000) (same). The town contends that its all volunteer board "wrestled with ... a complicated, challenging process" and rendered a timely decision under the circumstances. In the town's view, the board avoided deemed approval by regularly informing McEwing and the public that it might request additional information from McEwing, and thus kept the "evidentiary hearing" open until the board voted the evidence closed on April 3. McEwing argues that the board's continued statements regarding the possibility that it might request additional evidence, without more, do not satisfy the legal definition of a "final public hearing" for purposes of determining if and when deemed approval occurred. In McEwing's view, the board's evasion of the statutorily prescribed procedure resulted in the type of protracted deliberations that the deemed approval statute is meant to deter.

¶ 13. In *In re Fish*, we held that, for the purposes of the statutory provision involved here, a "public hearing" occurs if (1) it is open to the public, (2) the applicant receives notice of the hearing, and (3) the board offers an opportunity for interested persons to be heard on the issues before it. 150 Vt. 462, 465, 554 A.2d 256, 258 (1988). By contrast, "deliberations" are defined by the Open Meeting Law as the "weighing, examining and discussing the reasons for and against an act or decision, but *expressly excludes the taking of evidence and the arguments of parties*." 1 V.S.A. § 310(1) (emphasis supplied). The board conducts its business in accordance with the procedures adopted pursuant to the Open Meeting Law, and the minutes in the record from the various meetings present a picture of the board's deliberative

sessions that is consistent with the foregoing definition. See Town of Moretown's Zoning Regulations § 6.1(B)(3). Deliberative sessions that by definition and in practice do not satisfy all three *Fish* factors do not prevent deemed approval.

¶ 14. The minutes of board meetings contained in the record support McEwing's argument that the November 28, 2001 public hearing was the last hearing to satisfy all of the *Fish* factors, as does the town's concession that the board did not notice another public meeting on McEwing's application. At the close of the November 28 meeting, the board indicated that it would "work through all the material, [and] if [it has] enough information [the board] will make a decision as promptly and as fairly as possible." The board also notified McEwing that it *might* ask the applicant to return to present more evidence if needed, but it did not take the formal step of continuing the public hearing. See 24 V.S.A. § 4467 (public hearing may be continued, provided, however, that date and place of adjournment is announced at the hearing). The minutes from December 19 show that the board did continue its deliberative session on all three of the pending tower applications, including McEwing's. The minutes reveal, however, that the meeting was not open to the public and no new evidence was taken. The January 9 meeting did include public hearings on another telecommunications tower application, but not on McEwing's. At the close of the January 9 meeting, the board moved to continue the deliberative session "on the four Telecommunication Tower applications on 1/30/02."

¶ 15. By January 28, 2002, the sixty-first day after November 28, no new public hearing had been held on McEwing's application, no new evidence had been requested or submitted, and the board had not rendered a decision on the application. Nonetheless, the board continued to maintain that the evidence was open, and continued its deliberations. The January 30 meeting was another deliberative session closed to the public and the applicant. The minutes indicate that each of the four tower applications was reviewed, and that "[s]ubstantial progress was made and the Board expects to begin Findings at its next deliberative session, scheduled for February 13." On February 13, seventy-eight days after the last public hearing on McEwing's application, the board accepted a letter and photo simulation from McEwing into evidence at a public hearing that was dedicated to other applications. The board did not request the additional information provided by McEwing. On February 27, the board held a

public hearing on other applications, and neither the public nor the applicant were invited to be heard on McEwing's application. The board did continue its deliberative session on McEwing's application. The board held additional deliberative sessions closed to both the public and the applicant on March 13, March 21, and April 3 when it voted to close evidence on all the cell tower applications, including McEwing's.

¶ 16. Our review of the evidence leads to the conclusion that McEwing's application was deemed approved on January 28, 2002 pursuant to 24 V.S.A. § 4407(2) and Moretown's Zoning Regulations § 5.2(B). Consistent with the express terms of the statute, we hold that only public hearings, and not "deliberative sessions" accompanied by nonbinding representations about the status of the evidence, can prevent deemed approval in the absence of a timely decision from the board. Were we to hold otherwise, we would essentially permit boards an open-ended amount of time to perform a task — rendering a decision based on the assembled evidence and public comment — that the Legislature has explicitly confined to a sixty-day period. See 24 V.S.A. § 4407(2).

¶ 17. We acknowledge that town boards are staffed by volunteers who invest time and energy that is limited in view of their other obligations, but our application of the statute to the facts before us does not hinder the town's ability to fully consider any application. The statute strikes a balance between a board's need for maximum access to information about an application and an applicant's need for a timely decision.* The public hearing provides the board with a formal mechanism to obtain the needed information in a manner that is fair to all stakeholders; no conditional use may be permitted without a public hearing. *Id.* The statutory scheme recognizes that some applications may require the presentation of more evidence and the acceptance of more public comment than a development review board may have time for at any one public hearing. In such a case, the board may continue the hearing and reconvene it at a later date, as long as it announces at adjournment the time and place where the hearing will be reconvened. *Id.* Furthermore, a board may hold numerous public hearings, as long

---

* There are no material differences between the statutory language and the town zoning regulations that also govern the board's conditional use review. Compare 24 V.S.A. § 4407(2) with Town of Moretown's Zoning Regulations § 5.2(B). For convenience sake, we have referred mainly to the statute; however, our analysis applies equally to the regulation.

as the board decision is made sixty days after the *"final* public hearing." See *id.* (emphasis added).

¶ 18. We expressly reject the environmental court's holding that McEwing was not entitled to the deemed approval remedy because it had to "actively request the timely decision, or object to the successive adjournments at the time they are made," in order to invoke the deemed approval remedy. Section 4407(2) states that deemed approval occurs upon the failure of the *board* — not the applicant — to act within the sixty-day period. Thus, deemed approval occurs by operation of law, and requires no action on the part of the applicant. Moreover, the public and the applicant were excluded from deliberative sessions, and thus would have no opportunity to object to the successive adjournments at the time they were made.

¶ 19. We are not persuaded by the town's position that McEwing's voluntary submission of evidence on February 13 — more than two weeks after the deemed approval — eviscerates the statute. While it may be true that McEwing did not assert its deemed approval remedy until after it received an unfavorable decision, this is no defense against the bright line for deemed approval that the statute demarcates at sixty days from the final public hearing on the application. To allow unsolicited, voluntary submission of evidence after the deemed approval period has run to negate the effect of the statute would work a special hardship for applicants unfamiliar with the law, who may have voluntarily submitted additional information to a board in hopes of prompting action on a long delayed decision. Moreover, failure to adhere to the express terms of the statute would inevitably lead to confusion and disagreement over whether such submissions were sufficient to bar application of the deemed approval statute. McEwing's voluntary February 13 submission does not alter the fact that the board exceeded the sixty-day period of its own accord.

¶ 20. Moreover, the board did not need any of the evidence McEwing submitted after November 28 to reach its ultimate conclusion on the merits. The second independent ground upon which the board's April 10 decision rested was that the lot size for the project did not satisfy the minimum requirements for uses within the commercial district. A comparison of the lot size listed in the application and the "Lot Area Minimum" standard contained in the regulations would have quickly revealed the application's shortcomings. While we are aware that the board had several applications before it and was doing

its best to carefully review each one, the ultimate rejection was based on facts that were evident from the earliest stages of its deliberations.

¶ 21. As the town notes in its brief, this Court's recent decisions have taken a conservative approach to deemed approval. Deemed approval is "intended to remedy indecision and protracted deliberations on the part of zoning boards and to eliminate deliberate or negligent inaction by public officials." *In re Fish*, 150 Vt. at 464, 554 A.2d at 258 (internal citation and quotation marks omitted). Because the deemed approval remedy generally has the potential, as it does here, to transform a "negative decision [of the board] into a positive one," we have refused to apply the statute in a "wooden fashion," and have reserved it for cases where it clearly implements the statutory purpose. *In re Newton Enters.*, 167 Vt. 459, 465, 708 A.2d 914, 918 (1998). In arguing against the application of deemed approval in the instant case, the town relies on several of our cases where we rejected claims of deemed approval based upon technical defects in the decision or decision-making process. See *id.* at 465-66, 708 A.2d at 918 (reversing deemed approval based on timely, but defective, board vote when outcome of vote could not change even if defect was cured); *Leo's Motors, Inc. v. Town of Manchester*, 158 Vt. 561, 564-65, 613 A.2d 196, 198-99 (1992) (reversing deemed approval based on failure of town to provide timely written notice of decision even though it was rendered within statutory period); *Hinsdale v. Village of Essex Junction*, 153 Vt. 618, 625, 572 A.2d 925, 929 (1990) (denying deemed approval when board orally notified applicant of decision at last public hearing, timely committed decision to writing, but failed to mail decision within statutory period); *Fish*, 150 Vt. at 465, 554 A.2d at 258-59 (reversing deemed approval based on defect in notice of hearings held before expiration of period and that applicant attended and participated in notwithstanding defective notice). The cases cited involve timely rendered, but technically deficient or insufficiently noticed decisions. By contrast, the instant case involves an untimely decision that resulted from protracted deliberations, and, therefore, the statutory remedy is appropriate in this case.

¶ 22. The parties agree that there are no genuine issues of material fact. McEwing was entitled to judgment as a matter of law; thus, summary judgment should have been entered for it instead of the town.

*Reversed and remanded with instruction to issue the applicant's permit.*