STATE OF VERMONT

ENVIRONMENTAL COURT

| | } | |
|---|---|---|
| Appeal of Comi | } | Docket No. 95-6-04 Vtec |
| | } | |

Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicants Colin and Keri Comi appealed from two decisions of the Development Review Board (DRB) of the City of Burlington. In the above-captioned matter they appealed the DRB's May 4, 2004 decision to reopen and further consider its action on their application for a zoning permit. In Docket No. 108-6-04 Vtec they appealed the DRB's June 7, 2004 decision on the merits of that application. Appellant-Applicants Colin and Keri Comi are represented by Brian P. Hehir, Esq.; the City of Burlington is represented by Kimberlee J. Sturtevant, Esq. Interested persons Laura Massell, Paul Bierman, Sandy Wynne, Caryn Long, and Todd D. Schlossberg, Esq., appeared and represent themselves. The parties have moved for summary judgment in the above-captioned appeal.

The following facts are undisputed unless otherwise noted. Appellants own a corner property at 84-88 North Willard Street, with access onto both North Willard and Loomis Streets, in a Residential-Low Density zoning district. The lot has approximately 60

feet of frontage on Loomis Street and approximately 80 feet of frontage on North Willard Street. A four-unit apartment house is located on the lot. It is a pre-existing non-conforming use, as a four-unit multi-family dwelling is neither a permitted use nor a conditional use in the Residential-Low Density zoning district. See Table 5-A of the Zoning Ordinance.

The lot has two existing parking spaces to serve the building; these are tandem spaces accessed by an existing driveway from North Willard Street. The exact measurements of the existing spaces, the existing curb cut, and the location of those spaces with regard to the side setback are disputed with regard to the merits of the application in Docket No. 108-6-04 Vtec. The exact width and location of a curb cut on Loomis Street approved in 1996 may also be disputed with regard to the merits of the application in Docket No. 108-6-04 Vtec. The required number of parking spaces for four units would be eight spaces; however, existing structures are not subject to those requirements unless the use is changed or the structure is expanded or changed. §10.1.4.

Because it is a corner lot, the property has two front yards and two side yards. The minimum side yard setback is 10% of the lot width (but not less than five feet), so that the minimum side yard setback on Loomis Street is 6 feet and the minimum side yard setback on North Willard Street is 8 feet. North Willard Street is defined as a 'Major Street' in Table 5-E; therefore the required front yard setback along North Willard Street is

25 feet and the required front yard setback along Loomis Street is 15 feet. Driveways, walkways and associated parking areas apparently must meet these setbacks as the only exception is for shared driveways and walkways along a common property line. §5.3.6(j). The existing property appears to be non-conforming as to the North Willard Street front setback, as to the rear walkway along the Loomis Street side setback, and as to the setback for the existing parking spaces along the North Willard Street side setback.

The property also appears to be non-conforming as to lot coverage, as the maximum lot coverage for this property is 45%,[1] while the existing lot coverage is stated as 52% in Appellant-Applicants' application. The exact measurements of and calculation of existing and proposed lot coverage may also be disputed with regard to the merits of the application in Docket No. 108-6-04 Vtec.

Appellant-Applicants applied for a zoning permit to increase the number of parking spaces from two to five, with associated wooden curbing, landscaping, paving, and the removal of a concrete walkway in the rear of the building along the Loomis Street side lot line. They proposed to place two side-by-side spaces in the Loomis Street front yard, with access onto Loomis Street, and to reconfigure the two existing tandem parking spaces (with access onto North Willard Street) to place an additional space side-by-side with the front tandem space. The proposal required a Level I Zoning Permit (§4.2.4), which in

turn requires approval of a Certificate of Appropriateness by the Development Review Board prior to issuance of the Level I Zoning Permit.

The DRB held its initial hearing on the Certificate of Appropriateness on March 9, 2004. On March 11, 2004, referring to certain issues raised at that hearing, Appellant-Applicants requested that the DRB consider additional proposal options and set out additional calculations. The DRB held a further hearing on the revised proposals on April 6, 2004.

On April 12, 2004, the DRB partially approved the proposal, with four parking spaces: two side-by-side with access from Loomis Street and two side-by-side with access from North Willard Street, with conditions, among others, limiting lot coverage to the existing percentage, prohibiting parking within five feet of the property line, and limiting the total width of each parking area to 18 feet to 'avoid' the front-yard-parking prohibition.[2]

On April 15, 2004, an associate planner in the City's Department of Planning and Zoning, mailed Appellants a memorandum informing them that the DRB had voted to approve their proposal on April 12, 2004, and enclosing the conditions of approval. The cover memorandum stated that "in order to issue your permit on May 13, 2004" (that is, after the appeal period of the DRB's approval would have run) "these conditions will have to be met." On April 20, 2004, before the appeal period had run on the DRB's April

12, 2004 action on the Certificate of Appropriateness and before the Zoning Administrator had issued a zoning permit based on that Certificate of Appropriateness, two requests to reconsider the DRB's April 12, 2004 decision were filed with the DRB. Interested Person Todd Schlossberg filed a letter with the DRB, providing what he described as additional factual information, including specific property measurements, and requesting reconsideration and denial of the application based on his arguments that the application could not meet the requirements of the Zoning Ordinance. In addition the Planning and Zoning staff, "in consultation with the City Attorney's Office" requested the DRB to reconsider its decision and to reopen the public hearing to take further evidence regarding lot coverage and setbacks. On May 4, 2004, Appellant-Applicants submitted their arguments in writing as to why the motion should be denied. The DRB voted on May 4, 2004, to reconsider its April 12 decision and to hold a further public hearing on the proposal on June 6, 2004.

On May 24, 2004 Appellant-Applicants submitted a revised site plan, which included additional details and measurements of the area of the rear walkway to be removed, the proposed parking spaces, and the locations of existing and proposed features in relation to the setbacks and curb cuts. Mr. Comi's cover letter refers to the revised site plan as complying with the May 12, 2004 conditions of approval. The revised site plan shows four spaces rather than the five originally applied for. After the June 6,

2004 hearing, on June 7, 2004, the DRB held a deliberative session and voted to deny the revised site plan due to issues related to front yard parking and lot coverage. Appellant-Applicants' appeal of the merits of that decision is before the Court in Docket No. 108-6-04 Vtec.

Appellant-Applicants first argue that the Associate Planner's April 15, 2004 cover memorandum, advising them that the DRB had approved their Certificate of Appropriateness and enclosing the proposed conditions, itself constituted their zoning permit. However, the April 15, 2004 cover memorandum is not a zoning permit. Rather, it merely advises Appellant-Applicants that the zoning permit would issue on May 13, 2004, after thirty days would have expired after the DRB's approval of the Certificate of Appropriateness.

Appellant-Applicants next claim that the DRB had no authority to reopen the evidence and reconsider its initial approval, even if the decision to reopen was made, as it was, within the time for appeal from that decision.

In Nash v. Warren Zoning Board of Adjustment, 153 Vt. 108 (1989), the ZBA was allowed to reopen a proceeding, receive new evidence, and reconsider its decision, as it had voted to approve the application orally at a hearing, but had not yet issued its decision in writing, nor had the appeal period run. In that case, one of the ZBA members

had viewed the site after the hearing and had seen that the land was not so steep as had been represented by the applicant at the hearing. Based on the ZBA member's own observations, the ZBA voted on its own motion to reopen the hearing. At the reopened hearing witnesses presented additional evidence on the basis of which the ZBA changed its decision on the merits. The Supreme Court treated the ZBA's initial oral decision as not yet final, because no written decision had issued, and also noted that the appellant could not have acted in reliance on the initial decision, as the appeal period had not run. The Nash decision cited "substantial authority" for the proposition that "a municipal zoning authority may reopen proceedings and reconsider a decision where new evidence is submitted." 153 Vt. at 114.

In Appeal of Dunn, Docket No. 2-1-98 Vtec (Vt. Envtl. Ct., March 8, 1999), this Court relied on the Nash reasoning to allow a board to reopen its decision before the appeals period had run. We reasoned that:

[a]ny quasi-judicial board, whether municipal or administrative, should be allowed a limited time to reopen a decision and to take new evidence, if only for reasons of judicial and litigant economy in the reviewing court. That is, it is far more efficient for such a board to have the opportunity to correct its own decisions than to have the reviewing court necessarily make the correction. Further, even in a de novo proceeding, the reviewing court may find it necessary to remand the matter to the

board for it to consider an issue in the first instance.  In re Maple Tree Place, 156 Vt. 494, 499 (1991).  It is much better practice to avoid unnecessary remands [footnote omitted]  by allowing a board, which realizes that it has acted on incomplete or inadequate information, or is informed of previously-unavailable evidence, to reopen the initial proceeding if such a procedure may result in a sounder decision, so long as the reopening works no prejudice on the parties and they have adequate notice of the reopened hearing.

Dunn, slip op. at 5.

All of the criteria established in Dunn to allow the DRB to reopen its April 12, 2004 decision were met in the present case.  Once the DRB had brought to its attention the possibility that the measurements it had relied on may have been inaccurate or incomplete, the DRB was entitled to decide whether it wished to take additional evidence.  Prior to the expiration of the time for appeal of the original decision, on May 4, 2004, the DRB it voted to reopen and to hold a properly-warned hearing on the reopened decision.  As of the May 4, 2004 vote to reopen, the April 12, 2004 DRB decision had not yet become final as the appeal period had not expired.  Further, the DRB allowed the applicant and all other interested parties to present any additional evidence and argument at the hearing on the reopened decision.  Under these conditions, as in Dunn, there was no prejudice either

to parties favoring the original decision, nor to parties intending to appeal the original decision.

In addition, this is not an instance of DRB inaction that would trigger the remedy of deemed approval of an application.  See 24 V.S.A. §4464(b)(1) and see, e.g., In re Appeal of McEwing Services, LLC, 2004 VT 53, ¶¶21-22.  After its April 6, 2004 hearing the DRB acted on the application promptly on April 12, 2004.  It acted on the requests for reconsideration or to reopen the evidence promptly on May 4, having provided an opportunity for Appellant-Applicant to be heard on the decision of whether to reopen. After the evidence again closed at the June 6, 2004 reopened hearing, the DRB made its denial decision the following day.  The deemed approval remedy was not triggered by this sequence of DRB actions.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the City's and Interested Person Schlossberg's Motions for Summary Judgment are GRANTED and that Appellant-Applicants' Motion for Summary Judgment is DENIED.  This decision concludes Docket No. 95-6-04 Vtec.  The Court has scheduled a telephone conference (notice enclosed) to discuss whether this decision also concludes Questions 1 and 5 in Docket No. 108-6-04 Vtec, and to schedule the merits of the remainder of Docket No. 108-6-04 for hearing.

Done at Berlin, Vermont, this 14th day of March, 2005.

_____

Merideth Wright

Environmental Judge

_____

[1] Computed as 35% for this district, Table 5-C, with an additional 10% for the porch and front steps. §5.3.4(b).

[2] See exception in §10.1.18 for "access drives to the site eighteen feet (18') or less in width."