STATE OF VERMONT

ENVIRONMENTAL COURT

|   |   |   |
|---|---|---|
| | } | |
| Appeals of Harrison | } | Docket Nos. 110-6-04 Vtec and 44-2-05 Vtec |
| | } | |
| | } | |

Decision and Order on Motion for Summary Judgment

Appellant-Applicants James and Janet Harrison (Appellants) appeal from decisions of the Development Review Board (DRB) of the Town of Berkshire concerning Appellants' proposed Planned Residential Development (PRD) subdivision. In Docket No. 110-6-04 Vtec, Appellants appealed from the DRB's May 20, 2004 refusal to accept Appellants' application for site plan review and for approval of the subdivision[1] as a PRD. In Docket No. 44-2-05 Vtec, Appellants appealed from a January 27, 2005 decision of the DRB denying Appellants' application for site plan approval and for approval of the subdivision as a PRD. Appellants are represented by Eric A. Poehlmann, Esq.; the Town is represented Robert E. Farrar, Esq.

Appellants moved for summary judgment on the issue of whether any of their site

---

[1] Under the Berkshire Zoning Bylaws, approval of a subdivision under §240 is accomplished through site plan review (§235) rather than as a separate proceeding, as is approval of modifications for a PRD under §245.

plans should be deemed to be approved, based on the sequence of applications and DRB actions in these matters, including whether or when any of their applications should have been accepted as complete. The following facts are undisputed unless otherwise noted.

Appellants own an approximately 77.7-acre parcel of land located off Route 108, in the Rural Lands zoning district of the Town of Berkshire. The parties have not provided either the application or the proposed site plan at issue in the present appeals, but if the parcel is the same land as was at issue in an earlier appeal before the Environmental Court, Docket No. 199-9-02 Vtec, it consists of land located to the rear of four existing lots along Route 108, with access to Route 108 via a 50-foot-wide easement (right-of-way) proposed as a private road. In the present appeals, Appellants propose to subdivide a 25.1-acre portion of that 77.7-acre parcel into six[2] lots as a PRD.

Appellants first submitted an application for site plan[3] review on December 29,

---

[2] Because the Court was not provided with the site plan, we cannot determine why the application is not in fact a seven-lot PRD subdivision, consisting of the six described lots plus a seventh lot containing the 52.6 remaining acres retained by Appellants. However, the issues raised in this appeal do not depend upon that distinction.

[3] The Berkshire Zoning Bylaws do not in fact provide for separate "preliminary" and "final" stages of site plan review, although the parties have referred to the December 2003 application as one for "preliminary" site plan approval, and to the revised application submitted in May 2004 as one for "final" site plan approval.

2003, which was initially considered by the DRB at its January 15, 2004 hearing. Based on the unsigned minutes of that hearing, at the hearing Appellants' engineer presented the DRB with two other documents, described in the minutes as a "Request for Waiver of Subdivision standards" (presumably under the PRD regulations in §245, which provide for such a request) and a "Request for Site Plan Review." The minutes state that the DRB voted to "[w]ait for Act 250 process to be completed before the DRB accepts this proposal for official review." Appellants did not appeal this action of the DRB; therefore Questions 1 and 2 in the Statement of Questions in Docket No. 110-6-04 Vtec are beyond the scope of this appeal and are HEREBY DISMISSED.

Rather, Appellants submitted updated information in support of their site plan application at the DRB's hearing on May 20, 2004. Based on the unsigned minutes of that hearing, at the hearing the DRB again decided "not to hear [the] proposal at this time, that way the clock will not start," and the DRB chairman stated that the "Board will not accept [the] site plan application at this time because as previously voted the Board would not review [it] until [an] Act 250 permit was approved." On June 18, 2004, Appellants appealed to this Court from all "decisions, actions and refusals to act" taken by the DRB at its May 20, 2004 hearing, that is, the DRB's refusal to "accept" or "hear" Appellants' site plan application. That appeal was assigned Docket No. 110-6-04 Vtec; Questions 3 and 4 of the Statement of Questions, pertaining to those actions taken by the DRB at the May 20, 2004 hearing, remain in the appeal.

On June 29, 2004, the Chairperson of the Town's Selectboard sent a letter to Appellants stating that the Selectboard had directed the DRB to proceed with the review of Appellants' proposed PRD subdivision.  The letter informed them that a DRB meeting would be held on July 15, 2004, at which time Appellants' application would be on the agenda.

Based on the unsigned and unapproved minutes of the DRB's July 15, 2004 hearing,  at that hearing Appellants' engineer "presented a request for Site Plan Review" for the proposed PRD, presumably  including the elements for which waiver was being requested as a PRD, under §§235 and 245 of the Zoning Bylaws.  Later in the meeting, the DRB "reviewed the Zoning Bylaws and compiled a tent[at]ive list of additional information needed to consider the Harrison request."  The DRB scheduled a "special meeting" for July 29, 2004 at 7:00 p.m. at the Berkshire Town Office, "to conclude the list of additional information needed to consider the Harrison request," and also scheduled its next regular meeting for August 19, 2004.

If the July 29, 2004 special meeting took place, or was further recessed to August 19, 2004, no minutes of it have been provided to the Court.  However, it appears that Appellants' engineer must have been informed of the additional information requested by the DRB at some time before the August 19, 2004 regular meeting, as at that meeting he attended, presented "updated drawings" and a "soil evaluation," and gave "detailed answers" to a list of questions prepared by the Chairman of the DRB, who was not

present at the August 19 hearing.  Based on the unsigned minutes of that hearing, six individuals: Kimberly Ransom, Harold Greenia, Ronald Wonot, Jacqueline Greenia, Lorraine Conlon and Patrick Heaghney, referred to as interested parties and as neighboring landowners, were also provided the opportunity ask questions regarding the proposal.

At the close of the August 19, 2004 meeting, the three members of the DRB who were present voted "not to accept the application . . . at this time because the Chairman was not present and he had made all the legal contacts concerning the application."  The DRB then voted to "recess the meeting" until September 2, 2004.  However, if a September 2, 2004 meeting took place, or was further recessed to September 16, 2004, no minutes of it have been provided to the Court.

On September 16, 2004, the DRB held another hearing.  Based on the unsigned and unapproved minutes of the September 16, 2004 hearing, Appellants' engineer requested that "tonight's meeting be considered informal pending the September 27th, 2004 environmental court date, [as Appellants] do not want the information discussed tonight to prejudice the case."  The minutes state that Appellants' engineer "submitted revised copies of the [site] plan and informational sheets to be reviewed," that "discussion was held about the revisions," and that Appellants' engineer "would be back for the October 21st, 2004 meeting depending on the outcome of the September 27th, 2004 court" hearing.  The DRB voted to adjourn the meeting, without reference to another date.

This Court held pretrial conferences regarding the then-pending appeal (Docket No.

110-6-04 Vtec) on September 27 and 28, 2004, at which the parties agreed that the Court would place the appeal on inactive status until the DRB would have reached a decision on the merits of Appellants' site plan application, preserving whatever deemed-approval or other arguments Appellants had as of that date in that appeal.

DRB hearings on the merits of Appellants' site plan and PRD subdivision application were held on October 28, 2004, November 18, 2004, and December 16, 2004, as referred to in the January 27, 2005 DRB decision. That decision states that the DRB "elected to review the application on October 28, 2004," and again that it "voted unanimously to accept the Site Plan for review on October 28, 2004."

Based on the unsigned and unapproved minutes of the December 16, 2004 hearing, it was at that hearing that the DRB voted to deny Appellants' application on its merits, on the basis of its failure to "meet the minimum road frontage." The written decision was issued on January 27, 2005; its appeal to this Court was assigned Docket No. 44-2-05 Vtec.

Completeness and deemed-approval issues in Docket No. 110-6-04 Vtec

In the decision appealed in Docket No. 110-6-04 Vtec, the DRB initially refused to accept Applicants' applications for site plan approval, apparently on the grounds that the applications did not include an issued Act 250 permit. (We will assume, for the purposes of this discussion, that this project does require Act 250 approval, as this issue would be

moot if it does not.)

The final step in approval of any project is a zoning permit issued by the Zoning Administrator. Section 215(b)(1) of the Zoning Bylaws provides that no zoning permit shall be issued unless and until the listed other permits and approvals have been issued, if those other permits and approvals are required for the project. Section 215(b)(1) specifically lists "site plan approval, if applicable," §215(b)(1)(B), as one prerequisite to issuance of a zoning permit, and also lists "all applicable state permits," §215(b)(1)(E), as another prerequisite to issuance of a zoning permit. Thus the Zoning Administrator would not be authorized to issue a zoning permit until a project's Act 250 permit was in place and until the project had received site plan approval from the DRB.

However, nothing in §215(b)(1) requires an applicant to obtain the various other permits and approvals required for a project in any particular order, prior to applying for the zoning permit. Section 215(b)(1) does require that an Act 250 permit be obtained for the project prior to issuance of a zoning permit by the Zoning Administrator, but it does not require that the Act 250 permit be obtained prior to site plan approval (or prior to approval of the project as a PRD subdivision).

By contrast, nothing in §235 refers to any required state permits as a prerequisite to the DRB's consideration of site plan approval. Unlike the prerequisites to zoning permit approval in §215(b)(1)(E), §235 only requires information pertaining to site plan issues to be included in the application for site plan approval, §235(c)(1) (as well as requiring

submittal of the site plan drawings required by §235(c)(2)). The requirement in §235(c)(1)(F) that the site plan application's written statement include "evidence of receipt of all necessary reviews, approvals, and permits" therefore must refer only to the reviews and approvals necessary for site plan approval (including subdivision and PRD approval conducted through site plan approval), such as the municipal or state approval of septic systems required by §240(a)(3). As nothing in §§235, 240 or 245 requires prior Act 250 approval in order to obtain site plan approval, the DRB should not have refused to consider the site plan application on the sole basis that the project had not yet obtained its Act 250 permit.

However, under the specific language in §235(f) of the Zoning Bylaws, Appellants were not then entitled to deemed approval as to the application submitted at the May 2004 DRB hearing. That section requires that, within sixty days of "receiving a complete site plan application" the DRB shall "issue a written statement on the application;" it also provides that failure "to render a decision" shall be deemed approval of the application.

Analyzed under §235(f), the DRB did not consider the May 20, 2004 site plan application to be complete until, at the earliest, the August 19, 2004 meeting, as the DRB required more information (for reasons other than the Act 250 permit) through July 15, 2004, which Appellants provided at the August 19, 2004 hearing. As of September 28, 2004, the parties agreed to stop the clock. As of that date, the DRB had used 40 days, and therefore deemed approval did not occur. When the clock started again on

October 28, 2004, that date was treated by the DRB as the date of acceptance of a newly-revised application. The deemed-approval arguments regarding the application accepted for review on October 28, 2004, are discussed below under Docket No. 44-2-05 Vtec.

The DRB's failure to consider the merits of the May 20, 2004 application would have required us to remand this matter to the DRB for it to consider that application on its merits or to rule on its lack of completeness on other grounds. However, as the DRB proceeded in June of 2004 to consider the application on its merits without regard to the Act 250 permit issue, a remand is unnecessary.

Deemed-approval issues in Docket No. 44-2-05 Vtec

Section 235(f) of the Zoning Bylaws requires that, within sixty days of "receiving a complete site plan application" the DRB shall "issue a written statement on the application;" it also provides that failure "to render a decision" shall be deemed approval of the application. In this respect it goes beyond the state statute[4] in effect in early 2004,

---

[4] The state statute in effect through June of 2004 provided a 60-day deemed-approval period for a Planning Commission's or DRB's actions on site plan review, counted from the date on which it "receives the proposed plan." 24 V.S.A. former §4407(5). The statute provided a 45-day deemed-approval period for a Planning Commission's or DRB's actions on approval of a subdivision, counted from the date of "the public hearing." 24 V.S.A. former §4415. (Compare the 60-day deemed-approval period for a Zoning Board of Adjustment's (ZBA's) or DRB's actions on conditional uses, counted from the "final public hearing," 24 V.S.A. former 4407(2); and the

which required the DRB to "act to approve or disapprove" the site plan within sixty days after the date upon which it "receives the proposed plan."  24 V.S.A. former §4407(5). That is, the state statute had no completeness requirement for the application.

The DRB also seems to have confused the trigger for the start of the deemed-approval period for site plan approval with that for other types of DRB actions.  The site plan approval deemed-approval period is triggered by the DRB's receipt of a complete application.  The clock starts ticking once the application is complete; it cannot be postponed by recessing the hearing from time to time.  By contrast, under the state statute (applicable as there is no specific deemed-approval provision in the Zoning Bylaws regarding these other proceedings), the deemed-approval periods for subdivision approval, conditional use approval, or other appeals to the DRB are triggered from the date of the "public hearing," the date of the "final" public hearing, or from "completing" the hearing. 24 V.S.A. former §§4415, 4407(2), and 4470(a), respectively.

While the state statute changed as of July 1, 2004, under 24 V.S.A. §4481, existing municipal bylaws that are inconsistent with the new statute were not superseded by the state statute until September 1, 2005, and then only to the extent that they may be inconsistent with changes found in sections codified as 24 V.S.A §§4412, 4413, and 4440

---

45-day deemed-approval period for all other matters appealed to the ZBA or DRB, counted from "completing" the hearing.  24 V.S.A. former §§4464(c)and 4470(a).)

through 4476 of the new statute. Thus, even if the changes in the deemed approval provisions[5] of the state statute are considered to have superseded §235(f) of the Zoning Bylaws, that would not have occurred until September 1, 2005, after the events at issue in both appeals.

---

[5] See 24 V.S.A. §4464(b)(1) (2004) (45-day deemed-approval period applicable to all municipal decisions, counted from the "adjournment" of the hearing):

> The appropriate municipal panel may recess the proceedings on any application pending submission of additional information. The panel should close the evidence promptly after all parties have submitted the requested information. The panel shall adjourn the hearing and issue a decision within 45 days after the adjournment of the hearing, and failure of the appropriate municipal panel to issue a decision within this period shall be deemed approval and shall be effective on the 46th day.

In Docket No. 44-2-05 Vtec, the application was accepted for review on October 28, 2004, and may have been[6] determined to be complete[7] at that meeting. The DRB rendered its decision, for the purposes of deemed approval, on December 16, 2004, when it voted to deny the application, 49 days later. See, e.g., Appeal of Griffin, Docket No. 92-6-04 Vtec (Vt. Envtl. Ct., May 23, 2005), at 7 (ZBA "rendered its decision"when it voted).

The DRB then completed the requirements of §235(f) by issuing a written decision. The January 27, 2005 written decision was not issued within the sixty-day time period from October 28, 2004. However, §235(f) does not provide the deemed-approval remedy for failure to issue the "written statement on the decision" within sixty days; rather, deemed approval is only triggered by failure to "render the decision" within the sixty-day

---

[6] The October and November 2004 DRB meetings were not transcribed, nor were even unofficial minutes prepared for those meetings, due to technical problems with the recording equipment.

[7] In addition, at the December 16, 2004 hearing, Appellants submitted "a new landscaping plan [and] soil data sheets;" Appellants themselves characterize these materials as having been submitted "at the DRB's insistence," suggesting that the DRB may instead have viewed the application as incomplete until that time. See Appellants' Reply to the Town's Resp. to Appellants' Mot. for Summ. J., at 2. While under In re McEwing Services, LLC, 2004 VT 53, at ¶ 19, the "unsolicited, voluntary submission of evidence after the deemed approval period has run" does not bar the application of the deemed approval remedy, if the submission of supplemental information were in fact requested by the DRB, it would not fall within this rule.

period.  Deemed approval is intended to remedy protracted deliberations and indecision of the DRB,  In re Appeal of McEwing Services, LLC, 2004 VT 53, ¶ 21, but is not to be used beyond that purpose, Appeal of Newton Enterprises, 167 Vt. 459, 464-65 (1998).  The decision was rendered within the required time period.  Therefore, deemed approval of the October 28, 2004 site plan application did not occur and Appellants' motion for summary judgment on Questions 1 and 2  in Docket No. 44-2-05 Vtec must be denied.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED in Docket No. 110-6-04 Vtec that Questions 1 and 2 of the Statement of Questions are DISMISSED as beyond the scope of the appeal from actions taken by the DRB on May 20, 2004. Appellants' Motion for Summary Judgment is GRANTED as to Question 3 of the Statement of Questions, in that lack of prior Act 250 approval for the project does not in and of itself render a site plan application incomplete; but Appellants' Motion for Summary Judgment is DENIED and Summary Judgment is GRANTED in favor of the Town as to Question 4 of the Statement of Questions, in that Appellants' site plan application made on May 20, 2004, does not qualify for deemed approval under §235(f) of the Zoning Bylaws. This decision concludes Docket No. 110-6-04 Vtec.

Also based on the foregoing, it is hereby ORDERED and ADJUDGED in Docket No. 44-2-05 Vtec that Appellants' Motion for Summary Judgment is DENIED as to Questions 1 and 2 of the Statement of Questions. A conference is hereby scheduled for December 12, 2005, (see enclosed notice) to discuss the remaining issues in Questions 3, 4, and 5 of the Statement of Questions in Docket No. 44-2-05 Vtec. The parties should be prepared to discuss whether the proposal must be considered under §§235, 240 and 245 of the Zoning Bylaws; to state which elements they request waivers for as a PRD subdivision; and to file a copy of the site plan prior to the conference.

Done at Berlin, Vermont, this 29th day of November, 2005.

_____

Merideth Wright

Environmental Judge