STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Valois Airplane Storage Application | } | Docket No. 254-11-07 Vtec |
| (Appeal of Valois) | } | |
| | } | |

Decision and Order on Cross-Motions for Partial Summary Judgment

Appellant-Applicant Paul Valois (Applicant) appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Addison, denying Applicant's most recent zoning application regarding the storage of his airplane on his property. Applicant is represented by Marsha Smith Meekins, Esq.  The Town is represented by Donald R. Powers, Esq.  Interested Persons John M. Baker, Janice and Pierre Barre, Eric J. and Lisa A. Campbell, Jane and Phillip Grace, Deborah G. and Leon J. Laframboise, and Dale M. and Diane L. Rose have entered their appearances representing themselves.

On May 3, 2007, this Court issued a decision on the merits of an earlier application filed by Applicant proposing the use of a 1,100-foot-long mowed grass landing strip on his residential property in the Low-Density Residential and Agricultural zoning district, including the use of the strip for associated takeoffs and landings.  The Court concluded that the proposed use did not qualify as an accessory use to the residential use of his property.  In re: Appeal of Valois, Docket No. 7-1-06 Vtec (Vt. Envtl. Ct. May 3, 2007).

That decision noted, with regard to the annual off-season storage of Applicant's airplane in the already-existing hangar on his property, that no evidence had been presented on, and the Court did not reach, the following question:

> [w]hether the off-season storage of hobby conveyances (such as aircraft, boats, recreational vehicles, and snow machines) is sufficiently common to make just the off-season storage of the airplane an accessory use to the residential use of the property, if the landing strip were capable of being

1

approved for safety for that single annual trip by the necessary state or federal aeronautical regulatory authorities.

Id., slip op. at 10, n.11.

Although Questions 2, 3, and 4 in the Statement of Questions are posed in terms of whether the ZBA erred, in a de novo appeal such as this one those issues are more properly stated in terms of whether the Court should come to those conclusions on the merits of the present appeal. Applicant and the Town have filed a joint statement of undisputed facts, with supporting exhibits, and have each moved for summary judgment. The following facts are undisputed unless otherwise noted.

Some time ago Applicant had constructed a storage building on his property, suitable for use for storage, as a barn or as a hangar for a small fixed-wing aircraft. The construction of the storage building is not at issue in this appeal. The description of Applicant's property and the history of Applicant's earlier applications relating to this property is outlined in In re: Appeal of Valois, Docket No. 7-1-06 Vtec (Vt. Envtl. Ct. May 3, 2007), and In re: Appeal of Valois, Docket No. 226-12-04 Vtec (Vt. Envtl. Ct. Aug. 24, 2005), and will not be repeated in the present decision unless necessary.

Within a few days after the Court's decision was issued in Docket No. 7-1-06 Vtec, on May 13, 2007, Applicant initially submitted a new zoning application that requested to "store airplane" as per "permit #32-92." That permit number referred to a zoning permit granted to another landowner in the Town of Addison in 1992. The application approved in that 1992 permit had requested the new construction of "aircraft storage" and to "mow & maintain 2,000' grass strip for aircraft." The Zoning Administrator declined to rule on Applicant's May 13, 2007 application, and returned it and the filing fee to Applicant, stating in a separate letter that the application was incomplete, that it was not clear from the application "what it is that you want," and that the zoning ordinance "has no provision concerning what is stored in buildings." The letter invited Applicant to "submit an

2

application stating what you want with respect to your property, keeping in mind the above information."  The June 11, 2007 letter of the Zoning Administrator was not appealed and is not at issue in the present appeal.

Rather than appealing the Zoning Administrator's initial determination, Applicant submitted a new application on June 26, 2007, this time with an attached narrative statement.  The narrative stated that Applicant was seeking a zoning permit "for 'aircraft storage' at my property . . . and to 'mow and maintain an 1,100 foot grass strip for my current private owned single-engine, fixed wing airplane aircraft' or an aircraft of similar size or smaller." The narrative stated that the grass strip is not to be used by other pilots, but only by Applicant as the owner of the single-family residence on the property.  The narrative stated that "I desire to store my aircraft at my property in the off-season (winter and early spring) just as the owners of similar hobby conveyances such as recreational vehicles, sailboats, motorboats, all terrain vehicles, and/or snow machines do within the Town of Addison."  The narrative did not propose a particular number of takeoffs and landings to occur in connection with the proposed storage use.

The narrative explained that Applicant was also seeking a permit because Mr. Spencer had been required in 1992 to apply for a zoning permit for "aircraft storage" and "to mow and maintain a 2,000 foot grass strip for aircraft." The narrative requested the Town to advise Applicant in writing if "no permit is required for the aircraft storage and to mow and maintain my proposed 1,100 grass strip for the aircraft."

The narrative also explained that Applicant was aware of this Court's decision in Docket No. 7-1-06 Vtec, and stated that his "proposed use of the 1,100 [foot] grass strip will be in conformance with" that decision.

The Zoning Administrator denied this second application on July 3, 2007; Applicant appealed the denial to the ZBA, which warned and held a hearing on August 29, 2007.  At the August 29, 2007 hearing, the ZBA heard testimony on the application, but voted to

3

"table this case to next month's regular meeting [on September 26, 2007] and have the town lawyer" attend that meeting.

The parties have not provided the warning notice for the September 26, 2007 meeting.

The minutes of the September 26, 2007 ZBA meeting reflect that one of the neighbors of this project, Phillip Grace, was present, but that neither Applicant nor his attorney nor the Town's attorney was present. After the meeting was called to order, the ZBA first voted "to open the Paul Valois case." No additional evidence or argument was offered on the project. The ZBA then voted to "go into [e]xecutive [s]ession to share additional information before deliberation."

After coming back into the public hearing after its executive session deliberations, the ZBA voted to "submit a draft motion of our decision of denial to the Paul Valois case." As amended, the minutes reflect that the ZBA proposed that "the motion will be submitted via-email after the editing of the decision of denial by the town's lawyer." As drafted by the ZBA at its September 26, 2007 meeting, the denial decision as stated in the minutes read as follows (bold type in original):

> **The Town of Addison does not regulate what is stored in buildings. The Town does not regulate what is done with fields. The Town of Addison does not consider an airstrip to be an accessory use of a residence as decided on by the Environmental Court on [M]ay 3, 2007.**

The minutes stated that "[t]his will be out to everyone by October 5th, 2007."

The written decision denying the application was issued on Monday, October 15, 2007. After making findings which included that Applicant "seeks zoning approval to mow and maintain a grass strip for aircraft," including for "aircraft landings and takeoffs," and that Applicant "did not specify a specific number of landings and takeoffs per year," the decision made four conclusions. It concluded that the Zoning Ordinance does not regulate what is stored in buildings and does not regulate "the mowing of a strip of land."

4

The written decision also reiterated that the Zoning Ordinance "does not permit aircraft landing strips as accessory uses to residential uses," and "does not permit the use of landing strips as permitted uses under the category of Recreation." (The latter two findings reflect the decisions of this Court in Docket Nos. 7-1-06 Vtec and 226-12-04 Vtec.) The two-sentence "decision" portion of the ZBA decision stated that Applicant's "application for a permit to mow and maintain a 1100' grass strip for aircraft is denied" and that his "application for a permit to store an aircraft is moot because no such permit is authorized or required" by the zoning ordinance.

A signed copy of the ZBA decision was sent to Applicant by first class mail, postmarked on October 25, 2007.

Deemed Approval - Question 1

Question 1 of Applicant's Statement of Questions asks whether the ZBA's decision was issued within the 45-day statutory period found in 24 V.S.A. § 4464(b)(1), or whether it was deemed to have been approved.

Section 4464(b)(1) provides that the ZBA "should close the evidence promptly" after all parties have submitted any requested information, and that the ZBA "should adjourn the hearing and issue a decision within 45 days after the adjournment of the hearing." It provides that the failure of the ZBA "to issue a decision within this period shall be deemed approval and shall be effective on the 46th day." Id. Decisions must be in writing and must include "a statement of the factual bases on which the [ZBA] has made its conclusions and a statement of the conclusions." Id. "The minutes of the meeting may suffice, provided the factual bases and conclusions relating to the review standards are provided in conformance with [§ 4464(b)(1)]." Id.

The statutory provision for deemed approval "is 'intended to remedy indecision and protracted deliberations on the part of zoning boards and to eliminate deliberate or

5

negligent inaction by public officials.'" In re McEwing Services, LLC, 2004 VT 53, ¶ 21, 177 Vt. 38 (quoting In re Fish, 150 Vt. 462, 464 (1988)). Deemed approval is not appropriately applied to timely decisionmaking, even if the decision itself is technically deficient. See id. (collecting cases inappropriate for deemed approval because a timely decision was rendered, despite defects in decision or decisionmaking process). Applying the deemed approval remedy to situations without protracted deliberations, indecision, or deliberate or negligent inaction could result in approval of permits "wholly at odds with the zoning ordinance." In re Newton Enters., 167 Vt. 459, 465 (1998).

The ZBA began its hearings on Applicant's application on August 29, 2007. After consideration of Applicant's application, the application "was tabled to the next regular meeting on September 26, 2007 at 7:30 [p.m.]"

A ZBA may continue its hearings, provided that the time and place of the continued hearing is announced at the prior hearing. 24 V.S.A. § 4468. To prevent deemed approval, the continued hearing must constitute a public hearing, not only a deliberative session. In re McEwing Services, LLC, 2004 VT 53, ¶ 16 ("[O]nly public hearings, and not 'deliberative sessions' . . . , can prevent deemed approval in the absence of a timely decision from the board.").

A public hearing occurs if "(1) the hearing is open to the public, (2) the applicant receives notice of the hearing, [and] (3) the board offers an opportunity for interested persons to be heard on the issues before it." In re Fish, 150 Vt. at 465.[1]

The September 26, 2007 hearing was announced at the August hearing as being a

---

1 In In re Fish the Vermont Supreme Court construed a slightly different and earlier deemed-approval provision, former 24 V.S.A. § 4407(2), since amended and recodified by statute. Both the former § 4407(2) and current § 4464(b)(1) count the deemed-approval period from the date of the final public hearing. The former statute required the ZBA to "act to approve or disapprove" the application within the period, while the current statute requires the ZBA to "issue a decision" within the period.

regular public meeting of the ZBA. From the minutes of the August and September hearings, it appears that all three of the Fish criteria were met. Although in fact no additional evidence ended up being taken at the September 26, 2007 hearing, that hearing was open to the public, and Applicant received notice of the hearing at least at the August hearing. At the September hearing, the ZBA voted first to open the Valois case on the agenda, allowing any interested persons the opportunity to ask to testify further on the application, before voting to go into executive session.

Even if the September hearing had not qualified as a public hearing, that is, even if the deemed approval period had to be counted from August 29, 2007 rather than from September 26, 2007, the forty-fifth day fell on October 13, 2007, a Saturday. V.R.C.P. 6 provides a method for "computing any period of time prescribed or allowed . . . by any applicable statute." By that method, the day of the initial act is not included and, if the final day falls on a Saturday or Sunday (among other exceptions), the period runs to the end of the next day which is not among the listed exceptions. In the present case, the deemed-approval period therefore expired at the end of Monday, October 15, 2007, which is the date on which the written decision was in fact issued.

The ZBA appears to have made a decision to deny the application at the September 26, 2007 meeting, as it provided its "draft decision of denial" in the minutes of that meeting, but it did not issue a decision in writing on that day. The written decision was not issued until October 15, and the written minutes were not approved until the regular October 24, 2007 meeting of the ZBA. Unlike under the former statute, which turned on when the ZBA had voted or rendered a decision, the current statute requires the ZBA to "issue" its decision in writing or in the minutes within the required period. Compare, e.g., Leo's Motors, Inc. v. Town of Manchester, 158 Vt. 561, 565 (1992) (decision "finally made" at meeting), with In re: Dufault Variance Application, Docket No. 287-12-07 Vtec, slip op. at 7 (Vt. Envtl. Ct. Aug. 4, 2008) (meeting minutes reflected a vote, conclusions, and reasoning

7

preventing deemed approval).

Because the written decision was issued on October 15, 2007, well within the required time when measured from the September 26, 2007 public hearing, and was also within the time when measured from the August 29, 2007 public hearing, deemed approval did not occur. The fact that it was mailed out ten days later does not trigger deemed approval "so long as the failure to send a copy is inadvertent and not the result of a policy or purpose to withhold notice of the decision." Leo's Motors, 158 Vt. at 565; accord In re Griffin, 2006 VT 75, ¶¶ 14–15, 180 Vt. 589, 592–93 (mem.).

Summary judgment must therefore be denied to Applicant and granted in favor of the Town on Question 1; the application was not deemed to be approved.

Scope of present application - Questions 2 , 3, and 4 of the Statement of Questions

Footnote 11 on page 10 of the May 2007 decision left open only the possibility of Applicant's applying for off-season storage of the airplane in the storage building on his residential property, together with the single flight to the property in the early winter and away from the property in the late spring necessary to bring the aircraft to and from the storage building, and then if and only if the landing strip is approvable by the aeronautical authorities for that purpose. That is, if such a single annual flight were applied for, it would be considered as accessory to the storage use. In such an application, the Applicant would have the burden of showing that the off-season storage is "customarily incidental and subordinate to" the residential use of the property, and that the single annual flight is customarily incidental and subordinate to the off-season storage. Definition of "Accessory Building or Use," Article VIII of the Zoning Ordinance.

In the present application Applicant applied for such off-season storage and applied "to mow and maintain a grass strip for the aircraft," but did not specify any particular number of flights he proposed to make from or to the property, using the mowed grass

8

strip as a landing strip for his aircraft. Applicant also requested that, if no permit is required, the Town so advise him in writing.

The ZBA ruled that no permit was required for storage of the aircraft or for mowing and maintaining the grass strip, and that this Court's May 3, 2007 decision in Docket No. 7-1-06 Vtec had concluded the issue of use of the strip for takeoffs and landings as an accessory use to the residential use of the property. Although the ZBA did not specifically rule on whether off-season (winter and early spring) storage of the aircraft is similar to that done by owners of similar items such as recreational vehicles, sailboats, motorboats, all-terrain vehicles, and/or snow machines — that is, whether such off-season storage is an accessory use to the residential use of the property — the Town does not object to Applicant's storing his aircraft in the storage building.[2] Nor does the Town object to any mowing or maintenance the Applicant wishes to conduct on the property.

If Applicant, by Questions 2 and 3 of this appeal, means to challenge the ZBA's decision allowing the storage and the mowing, the Court can proceed to address those questions by summary judgment, as no material facts appear to be in dispute. However, the argument at page 5 of Applicant's "reply brief" filed on April 24, 2008, does not appear to challenge either of these decisions. Rather, Applicant argues an issue not contained in the Statement of Questions nor contained in the scope of the application: whether the ZBA can regulate the use of the grass strip for landings and takeoffs if it has no authority to regulate storage and mowing.

If Applicant is requesting to use the mowed grass strip for takeoffs and landings as accessory to the storage request, he did not request any specific number of flights in the

---

2   While in this instance the ZBA decision stated that the Zoning Regulations do not regulate the contents of a storage building, in fact the Zoning Regulations do regulate aspects of storage, for example, "inside storage" as a cottage industry under § 518, or the proportion of a dwelling used for storage of inventory for a home occupation under § 503.

present application, and did not show the number of flights that would be "customarily incidental and subordinate to" the storage use of the property. The fact that the storage building is already built and that the storage use of the property (as accessory to the residential use) is a permitted use, does not exempt the change of use of the mowed grass strip from requiring a zoning permit. At the very least, by the terms of § 320 of the Zoning Ordinance, the use of the mowed grass strip for any takeoffs or landings would have to obtain a Certificate of Occupancy stating that the proposed use of the land conforms to the provisions of the zoning regulations. Such use only conforms to the provisions of the zoning regulations if it can be shown to be accessory to some allowed use.

The use of the mowed grass strip as accessory to the residential use of the property was decided in Docket No. 7-1-06 Vtec; all that remains in the present case is whether the use of the mowed grass strip for some limited number of takeoffs and landings is accessory to the off-season storage use of the storage building.

Material facts are in dispute as to those aspects of Questions 2, 3, and 4 that incorporate this remaining issue; summary judgment is DENIED.


Question 5 – Selective Treatment

Although this appeal is not brought in the enforcement context, Applicant's Question 5 essentially raises the question of whether he has been treated improperly and differently from a similarly situated 1992 permittee. See In re Letourneau, 168 Vt. 539, 549–50 (1998) (describing this type of equal-protection claim). The question of whether Applicant is similarly situated to the other applicant is essentially a question of fact. Although those facts may not be in dispute, they have not yet been provided to the Court on this issue in the present appeal.

The 1992 Spencer permit was not appealed; there is no indication whether it was issued in compliance with the zoning ordinance as it existed in 1992. The Spencer airstrip is

2000 feet long; no evidence is before the Court regarding its surroundings. If it is in use, presumably it has received approval from the relevant aeronautical authority.

This Court's decision on a proposed expansion of the use of the Spencer airstrip in In re Spencer, Docket No. 24-2-98 Vtec, slip op. at 1–2 (May 17, 1999) reveals that the Spencer property had obtained a subdivision permit in 1996, which also was not appealed, and that the Spencer residential lot was a separate subdivided lot (Lot 4) in that subdivision, distinct from Lot 6 which contained only the airstrip. This Court's decision in Spencer stated that "[b]ecause there is no primary use on Lot 6 other than the airstrip, this application does not raise or resolve the question of whether an airstrip on a large residential property could ever qualify as an accessory use to the single-family residential use of the parcel." Id. at 2.

If Applicant wishes to pursue Question 5 of the Statement of Questions, he should be prepared to address whether his property or application is "similarly situated" to the Spencer property or application.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that summary judgment is GRANTED in favor of the Town on Question 1; the application was not deemed to be approved. Questions 2 through 5 remain for trial or for further motions consistent with this decision. A telephone conference has been scheduled (see enclosed notice) to discuss further scheduling in this matter.

Done at Berlin, Vermont, this 23rd day of September, 2008.

_____
Merideth Wright
Environmental Judge

11