STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Clyde's Place, LLC, Application | } | Docket No. 9-1-08 Vtec |
| (Appeal of Clyde's Place, LLC) | } | |
| | } | |

Decision and Order on Appellant's Motion for Partial Summary Judgment

In Docket No. 9-1-08 Vtec, Appellant Clyde's Place, LLC, appealed from a decision of the Development Review Board (DRB) of the Town of Orwell, denying Appellant's alternative requests for approval of the proposed guest house as an existing nonconforming structure under Article VII of the 1995 Zoning Bylaws or § 4.12 of the 2007 Land Use Regulations, or as qualifying for a variance under § 3.7 of the 2007 Land Use Regulations. Two other related cases have been filed with the Court but are not involved in the present motions: Docket No. 142-7-07 Vtec, which is an appeal of a Notice of Violation, and Docket No. 17-1-08 Vtec, which is an enforcement action filed by the Town. Appellant is represented by Karl W. Neuse, Esq., and Benjamin W. Putnam, Esq.; and the Town is represented by Mark F. Werle, Esq., and Gregory J. Boulbol, Esq.

Appellant moved for summary judgment on Questions 1, 2, and 3 of the Statement of Questions, relating to whether the decision on appeal is void because members participated in the decision without having attended a November 20, 2007 hearing, whether the decision is void because three Board members changed their initial votes, and, if the decision is void, whether Appellant is entitled to deemed approval of its application. In connection with the issues in the present motions, the parties provided audio tapes of the DRB meetings held on November 20, 2007 and December 19, 2007, as they relate to this application. The following facts are undisputed unless otherwise noted.

1

Appellant Clyde's Place, LLC, owns a half-acre parcel of land at 420[1] Mount Independence Road on the shore of Lake Champlain. Under the former 1995 zoning ordinance, it was located in the Rural Residential zoning district. Under the current 2007 zoning ordinance (2007 Land Use Regulations), it is located in the Rural zoning district, and also in the Shoreland overlay zoning district and the Flood Hazard overlay zoning district. Patrick Barry is a representative or member of Appellant who has been acting for Appellant in the proceedings that are the subject of this appeal.

The property contains a main house not at issue in the present case, and contained a second existing residential building with a 21' x 21' foundation. Issues as to the size of the then-existing building and its relation to the slope of the land, including whether it had a walk-out basement, whether the entrance to the next story above the basement was at ground level from the side of the house facing away from the lake, and the volume of the house above the foundation, may be at issue with regard to the merits of this matter, but are not at issue in the present motions.

On June 5, 2006, Rae Anne Barry and Patrick Barry applied for and received a zoning permit, issued by the Zoning Administrator, for new residential construction "over existing footprint." The application described the present use of the property as "unused dwelling on Barry property" and described the proposed use as "guest hous[e] on Barry property."

The rough sketch plan attached to the 2006 application for the zoning permit showed the location of the proposed construction in relation to the main house on the property, close to a private lane, and showed the locations of several neighboring houses and Mount Independence Road. The sketch plan showed the proposed guest house location indicated with an arrow and labeled as: "21 x 21 footprint to be used – dug foundation [–] 2 stories – existing plumbing and sewage." The sketch plan did not

---

[1] Referred to incorrectly in some of the exhibits and memoranda as 422 Mount Independence Road.

depict the property boundaries or the "location in feet for frontage, depth of lot, setback from a public road, and side and rear setbacks from property lines" required by the application form to be provided on the sketch plan. The sketch plan also did not show the lake shore, although the scaled site plan provided by Appellant in connection with the present motions shows the porch or deck of the former building as having been located only twelve feet from the lake shore. Issues as to conversations between Appellant's representatives and former Zoning Administrators may be at issue with regard to the merits of the enforcement cases, or any estoppel arguments, but are not at issue in the present motions.

Section 406 of the 1995 Zoning Bylaws prohibited more than one residential building per lot. Section 5.1 of the 2007 Land Use Regulations[2] allows an accessory residential building, although it is required to meet all dimensional standards.

As actually constructed, the new guest house consists of the walk-out basement level, and two-and-a-half stories over that level. The walk-out basement level occupies the 21' x 21' area of the former foundation. Based on the elevations and plans provided in connection with the present motion, both the ground floor level and the new upper floor level of the house appear to extend beyond that foundation by three additional feet on the side of the house away from the lake, and by seven additional feet on each side of the house, so that the footprint of both stories of the house (above the basement) is 24' x 35'. The lakeshore wall of both the old and the new structure is in the same location, twenty feet from the lake shore. The new deck extends farther laterally on both sides than did the previous deck, but is one foot narrower, so that it is located thirteen feet from the lakeshore. Issues regarding whether the new structure constitutes

---

[2] The parties have not provided the date on which the public notice was issued for the first public hearing on the 2007 Land Use Regulations, necessary to determine whether the proposed 2007 Land Use Regulations were applicable to the 2006 permit application. 24 V.S.A. § 4449(d).

an expansion, and how it is regulated under the zoning ordinance, may be at issue with regard to the merits of this matter, but are not at issue in the present motions.

Although Appellant appealed the issuance of an April 23, 2007 Notice of Violation (in Docket No. 142-7-07 Vtec), Appellant also submitted a new permit application for the as-built structure, characterizing it as the "[r]eplacement of existing nonconforming structure." Appellant listed the setbacks as follows: front setback (from the lake) as 12 feet, back (apparently from the private road) setback as 36 feet, and side setbacks as 52 and 150 feet. The application stated the building's dimensions as "21 x 21; 24 x 35," and stated the building's maximum height as "28 feet," and the number of stories as "2." Appellant also included a scaled site plan and elevations of the building. Issues as to the size of the as-built building and its relation to the slope of the land, walk-out basement, location of the entrance, size of the deck facing the lake, and the size and volume of the house above the foundation, whether or how the building is cantilevered, and what was told to Appellant's representatives by prior representatives of the Town, may be relevant to the merits of this matter, and to the other two matters before the Court, but are not at issue in the present motions.

Appellant requested consideration of the proposal as an existing nonconforming structure under Article VII of the 1995 Zoning Bylaws or § 4.12 of the 2007 Land Use Regulations, or as qualifying for a variance under § 3.7 of the 2007 Land Use Regulations.[3] It is this 2007 application that is the subject of the present appeal.

The DRB held a hearing on the application on November 20, 2007. DRB members Thomas Purdy, Sr., David King, Clyde Park, Donald Tupper, and Andrea Ochs were present at the hearing; DRB members Miles Tudhope and Ed Taube were

---

[3] In addition, the 2007 Land Use Regulations now provide in § 3.6 for waivers, with different criteria than the statutory requirements for a variance, but only "where specifically authorized in these regulations." § 3.6(A). No party claims that any waiver provision in the 2007 Land Use Regulations is applicable to this application.

4

absent. At the hearing, Patrick Barry and his sister Margaret Barry Toth provided testimony and other evidence regarding the history of the property and the former structure, their interactions with representatives of the Town with respect to the property, and the characteristics of the proposed structure.

After the evidentiary and discussion portion of the hearing, the five members of the DRB who were present that evening voted on a motion to approve a variance for the lake side setback. Three members of the DRB voted in favor of the motion (Park, Tupper and Ochs), and two members of the DRB abstained from voting (Purdy and King). Ms. Ochs announced that the variance had been granted; however, the issue was immediately raised that the vote had not resulted in a valid approval of the variance request because a majority of the entire seven-member board had not voted in favor of the motion. 24 V.S.A. § 4461(a)(final sentence); 1 V.S.A. § 172. The five members present then voted on a motion to approve the variance with specific reference to § 3.7 of the 2007 Land Use Regulations, which also did not result in a vote by a majority of the full board. Two members of the DRB voted in favor of the motion (Tupper and Ochs) and three members of the DRB voted against it (Park, Purdy and King).

The DRB then voted to continue the consideration of the variance application to the next DRB meeting. The DRB warning of the December 19, 2007 hearing referred to this agenda item as: "[c]ontinuation of a variance application from Patrick E. Barry."

On December 5, 2007, Appellant's attorney sent a letter to the Town's attorney explaining that his client's representatives had "left the November 20 DRB hearing with the understanding that the hearing had been completed" because "the [DRB] took all of the evidence that was presented, declined to request submission of any additional evidence, and completed a vote on the variance question;" and that he had not advised his client's representatives to attend the December 19, 2007 hearing.

At the December 19, 2007 hearing, all seven DRB members were present, as was Appellant's attorney. The two DRB members (Miles Tudhope and Ed Taube) who had

not been present at the November hearing stated that they had viewed the evidence presented at the November hearing and had also listened to the tape of that hearing. The DRB asked whether anyone wished to submit any new evidence or comments. Attorney Neuse stated Appellant's understanding from the November hearing that the hearing had been closed when the votes were taken in November, and that the deemed approval time was running from the November 20, 2007 hearing. He also stated Appellant's argument that the two members who had been absent for the November hearing had not observed the demeanor of the witnesses and should not be allowed to vote on the decision. No new evidence was presented at the December 19, 2007 hearing.

The DRB then entered into a deliberative session, after which all seven members voted unanimously to deny the variance. On December 28, 2007, the DRB issued its written Findings of Fact and Decision, signed by all seven members of the DRB, concluding that Appellant was "not entitled to a variance" and that "a zoning permit should not issue."

Question 2 – Reconsideration of Vote

As explained at length in In re Appeal of Dunn, No. 2-1-98 Vtec (Vt. Envtl. Ct. Mar. 8, 1999), and cited in, e.g., In re Appeal of Comi, No. 95-6-04 Vtec, slip op. at 4–6 (Vt. Envtl. Ct. Mar. 14, 2005) (Wright, J.), a DRB may vote to reconsider its decision as long as the time has not expired for an appeal to be taken from the decision, that is, if there has not been reliance on the previous decision. A DRB may warn a hearing to take additional evidence and an additional vote, by following the procedures for reconsideration outlined in Appeal of Dunn.

In the present case, immediately following the announcement of the vote of three in favor and two abstentions at the November 20, 2007 hearing, Appellant's representatives and the DRB members became aware that the vote had actually been

6

insufficient to constitute 'action' by the DRB, because it had not been taken by a "concurrence of a majority" of the full seven-member DRB. 24 V.S.A. § 4461(a) (final sentence); 1 V.S.A. § 172; In re Lionni, 160 Vt. 625 (1993) (mem.). Unlike under the common law rule, in Vermont abstentions are not counted with the majority to determine whether a vote has been taken by the concurrence of a majority. In re Reynolds, 170 Vt. 352, 357 (2000). The DRB's second vote at the November meeting, on a slightly changed motion, was similarly ineffective, resulting in a vote of three in favor and two opposed.

Given the lack of a "concurrence of a majority" of the members of the DRB, and the inability of the DRB to take "action" on Appellant's application at the November 20, 2007 meeting, it was permissible for the DRB to vote to continue the hearing until more members would be present. The DRB did not, strictly speaking, vote to reconsider, rather, it simply continued the hearing to a future date on which enough DRB members would be present to take effective action on the application.

As discussed in In re Appeal of Dunn, even if the DRB in the present case had voted to reconsider or reopen an effective "action" taken on November 20, rather than simply to continue the hearing so that an effective vote of the DRB could be taken, the DRB properly warned the December 19, 2007 hearing and gave all interested parties the opportunity "to present any additional evidence and argument at the hearing on the reopened decision" so that there was "no prejudice either to parties favoring the original decision, nor to parties intending to appeal the original decision." Appeal of Dunn, slip op. at 5. The fact that Appellant in the present case chose not to present additional evidence does not make the DRB's deliberations and vote on December 19, 2007 improper.

In reconsidering a decision, members of a DRB are free to vote differently than they had initially voted; if they were not, reconsideration would have no purpose. As this Court recognized in In re Appeal of Dunn, "it is far more efficient for [a DRB] to

7

have the opportunity to correct its own decisions than to have the reviewing court necessarily make the correction." Appeal of Dunn, slip op. at 4. Reconsideration allows a DRB to correct errors by providing its members an opportunity to consider the evidence anew and to vote accordingly. Similarly, in the present case the DRB members who had been present at the first hearing were free to change their vote upon further consideration of the evidence and further deliberations among themselves; their change from the initial attempted vote does not render their December 2007 decision void.

#### Question 1 – Participation of DRB members not present at November hearing

In Vermont, even in a case using the more formal proceedings necessary to have an appeal be considered on the record, an absent member is allowed to participate in the vote if that person listens to an audio or video recording of any missed testimony and reviews all the exhibits and other evidence. 24 V.S.A. § 1208(b). Such procedure is also sufficient under Vermont law in order to comply with due process, Lewandoski v. Vt. State Cols., 142 Vt. 446, 452–53 (1983); In re JLD Props. – Wal Mart St. Albans, No. 132-7-05 Vtec, slip op. at 9 (Vt. Envtl. Ct. Sept. 5, 2006) (Wright, J.); see generally 4 K. Young, Anderson's American Law of Zoning § 22.46 (4th ed. 1997 & Supp. 2008) (discussing voting by board members who did not attend hearings), unless the record available to the absent board members does not provide a reasonable basis for evaluating the testimony or other evidence in question, In re Villeneuve, 167 Vt. 450, 455–57 (1998) (members present at hearing viewed and test drove vehicle in question; absent members who did not do so should not have participated in the decision).

In the present case, the two absent members who participated in the decision stated on the audio tape at the outset of the December 19, 2007 hearing that they had listened to the tape of the previous day of hearing and had examined all the documentary evidence. We need not determine whether the record available to them provided a reasonable basis for evaluating the evidence, because the December 19, 2007

8

vote was unanimous. That is, even if the votes of the two DRB members who had not been present at the November 20, 2008 hearing had not been counted, the result would have been five-to-zero against approval of the variance.

In a municipality that has not adopted the procedures necessary to have its appeals be on the record, this Court is directed by statute to consider the application de novo, applying the substantive standards applicable in the tribunal appealed from. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g). In such de novo cases the Court does not generally examine procedural defects at the municipal level, unless they are so egregious as to implicate basic questions of fairness and impartiality. See, e.g., In re JLD Props., slip op. at 4–8 (board member's appearance of pre-judgment required Court to examine procedural defects at municipal level). No such pre-judgment or other egregious behavior is alleged to have contaminated the vote in the present case. The participation of the two members who had been absent for the November 2007 hearing did not render the December 2007 decision void.

Question 3 – Deemed Approval

Under the state statute governing DRB procedure, a DRB "should close the evidence promptly" after all parties have submitted any requested information, and "shall adjourn the hearing and issue a decision within 45 days after the adjournment of the hearing." 24 V.S.A. § 4464(b)(1). A DRB's failure "to issue a decision within this period shall be deemed approval and shall be effective on the 46th day." Id. Decisions must be in writing and must include "a statement of the factual bases on which the [DRB] has made its conclusions and a statement of the conclusions." Id. "The minutes of the meeting may suffice" as such a decision, provided that "the factual bases and conclusions relating to the review standards are provided in conformance with [§ 4464(b)(1)]." Id.

As discussed in In re Valois Airplane Storage Application, No. 254-11-07 Vtec, slip op. at 5–8 (Vt. Envtl. Ct. Sept. 23, 2008) (Wright, J.), the statutory provision for deemed approval "is 'intended to remedy indecision and protracted deliberations on the part of zoning boards and to eliminate deliberate or negligent inaction by public officials.'" In re McEwing Services, LLC, 2004 VT 53, ¶ 21, 177 Vt. 38 (quoting In re Fish, 150 Vt. 462, 464 (1988)). Deemed approval is not appropriately applied to timely decisionmaking, even if the decision itself is technically deficient. See In re McEwing, 2004 VT 53, ¶ 21 (collecting cases inappropriate for deemed approval because a timely decision was rendered, despite defects in decision or decisionmaking process). Applying the deemed approval remedy to situations without protracted deliberations, indecision, or deliberate or negligent inaction, could instead result in approval of permits "wholly at odds with the zoning ordinance." In re Appeal of Newton Enters., 167 Vt. 459, 465 (1998).

In the present case the DRB began its hearings on Applicant's application on November 20, 2007. A DRB may continue its hearings, provided that the time and place of the continued hearing is announced at the prior hearing. 24 V.S.A. § 4468. Even if the December 19, 2007 hearing did not constitute a 'public hearing' sufficient to prevent deemed approval in the absence of a timely decision from the DRB, that is, if it was only a deliberative session, In re McEwing, 2004 VT 53, ¶ 16, the decision was timely if measured from the November 20, 2007 hearing to the December 28, 2007 written decision.

Unlike under the former statute, which turned on when the DRB had voted or "rendered" a decision, the current statute requires the DRB actually to "issue" its decision in writing or in the minutes within the required period. 24 V.S.A. § 4464(b)(1). Compare, e.g., Leo's Motors, Inc. v. Town of Manchester, 158 Vt. 561, 565 (1992) (decision "finally made" at meeting), with In re Dufault Variance Application, No. 287-12-07 Vtec, slip op. at 7 (Vt. Envtl. Ct. Aug. 4, 2008) (Wright, J.) (meeting minutes

10

reflected a vote, conclusions, and reasoning preventing deemed approval); In re Valois, slip op. at 5–8. The minutes of the December 19, 2007 hearing fail to meet the statutory requirement to be sufficient as a decision, as they just record the vote and do not provide either a "statement of the factual bases" for the DRB's conclusions, or a "statement of the conclusions." 24 V.S.A. § 4464(b)(1). Accordingly, the deemed approval period must be counted from the November 20, 2007 hearing to the December 28, 2007 written decision, a period of thirty-eight days.

Because the December 19, 2007 vote was not void and the written decision issued on December 28, 2007 was within the required time when measured from the November 20, 2007 public hearing, deemed approval did not occur.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's Motion for Partial Summary Judgment is DENIED, and summary judgment is entered in favor of the Town on Questions 1, 2, and 3 of the Statement of Questions.

Done at Berlin, Vermont, this 14th day of November, 2008.

_____
Merideth Wright
Environmental Judge