STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re General Land Company | } | |
|    Conditional Use Application | } | Docket No. 223-10-08 Vtec |
|      (Appeal of General Land Company) | } | |
| | } | |

<u>Decision and Order on Pending Motions to Dismiss and for Partial Summary Judgment</u>

Appellant-Applicant General Land Company ("Applicant" or "General Land") appealed from a decision of a municipal panel[1] of the Town of Plymouth (the panel), denying approval of a proposed five-lot subdivision. Appellant-Applicant is represented by A. Jeffry Taylor, Esq.; Interested Persons Richard Martin and Kermit R. Upton have appeared and represent themselves; and the Town is represented by William E. Flender, Esq.

Applicant's motion to amend its statement of questions was granted in February 2009. Several of the pending motions had been filed prior to the amendment, and the amended questions carried forward from Applicant's several earlier-filed statements of questions were renumbered or presented in a different order. To avoid confusion, all references to the questions in Applicant's Statement of Questions are to the Amended Statement of Questions filed on January 21, 2009, and use the numbering system of the Amended Statement of Questions.

In addition, Amended Question 7, which carried forward Recast Question 3, should have been omitted entirely, as Recast Question 3 was withdrawn by Appellant-Applicant by letter of January 12, 2009, due to the fact that it duplicated Recast Question 2.

---

[1] The issue of whether this panel was the Zoning Board of Adjustment, the Planning Commission, or both, is germane to the appeal and is fully discussed in this decision.

<u>Motion to Dismiss</u>

The Town moved to dismiss Amended Questions 10, 14, 15, and 16 (Recast Questions 6, 10, 11, and 12).

While it is true that Amended Questions 10 and 14 are encompassed in and will have to be answered in order to rule on Amended Question 12, there is no reason to dismiss them. Rather, they, together with Amended Questions 15, 16, and 17, address the merits of the case, however awkwardly drafted. None of the questions can be answered in the abstract or in general; they must be related to the merits of the present application, which is <u>de</u> <u>novo</u> before this Court. Accordingly, Amended Questions 10 and 15 can only be answered as to this application, not in the abstract. Amended Question 16 is incompatible with the <u>de</u> <u>novo</u> task before this Court. The motion to dismiss is therefore GRANTED as to Amended Question 16, and is otherwise DENIED, with Questions 10 and 15 limited to the merits of this particular application. At the telephone conference (scheduled in the final paragraph of this decision) the parties should be prepared to clarify the scope of the remaining issues as to the merits of this application.

<u>Motions for Summary Judgment</u>

The Town moved for partial summary judgment as to Amended Questions 1, 2, 3, 4, 5, 8, 9, and 11. In addition, Applicant has raised an issue regarding Amended Question 13. Any other issues that Applicant sought to incorporate through the Gilmore Road, LLC memorandum are beyond the scope of the questions raised in the Amended Statement of Questions, and therefore are beyond the scope of the present appeal.

As Applicant's March 17, 2009 memorandum incorporated by reference the March 13, 2009 summary judgment memorandum of Gilmore Road, LLC in Docket No.

2

194-9-08 Vtec, the Court has considered the Selectboard minutes and other documents filed by Gilmore Road, LLC in connection with that memorandum, as well as the exhibits filed by both moving parties in the present appeal.[2]  The following facts are undisputed unless otherwise noted.

Applicant applied on April 22, 2008, for a conditional use permit to subdivide an 83.5-acre parcel of property into five lots.  The property is located in the RD5 and RD10 zoning districts of the Town of Plymouth, in which the minimum lot sizes are five and ten acres, respectively.  The property is located on the easterly side of Pine Hill Road, a class 4 road.

The panel considering the application held hearings on June 3, 2008, July 1, 2008, and August 5, 2008, at which meeting the hearing was closed, but the vote was tabled until a missing member could participate in the September 2, 2008 hearing at which a vote was taken. The panel issued an unsigned written decision internally dated September 10, 2008.  The decision denied the application on the basis that it fails to meet conditional use standard § 4.16.2(c), regarding landscaping and screening, and § 4.16.2(g):  "[t]he character of the area affected[,] as defined by the purposes of the zoning district and the stated policies and standards of the Plymouth Town Plan."

Enabling Authority in State Statute

Since 1995, the state statute has allowed municipalities to create development review boards (DRBs) to conduct the functions formerly allocated to the ZBA as well as to conduct the subdivision and site plan review functions formerly allocated to the Planning Commission.  24 V.S.A. § 4461(a) (2003); 24 V.S.A. § 4460.[3]  The creation of a

---

[2]  A decision has also been issued regarding similar motions in In re Gilmore Road, LLC, No. 194-9-08 Vtec (Vt. Envtl. Ct. Sept. 10, 2009) (Wright, J.).

[3]   All citations to the state statutes without a parenthetical year refer to the current version.

DRB leaves the Planning Commission to perform solely its planning functions. The Town of Plymouth has not created a development review board.

A municipality's legislative body is authorized to create a planning commission under 24 V.S.A. § 4321, which was in effect in 1967. Until it was amended in 2004 (2003, No. 103 (Adj. Sess.), § 1), 24 V.S.A. § 4323 (2003) provided for the term of each member to be four years in length, and required the terms of the members first appointed to be staggered. The 2004 amendment, codified at § 4323(a), requires the legislative body of the municipality to determine the terms of the planning commission members. Section 4322 provides that a planning commission "shall have not less than three nor more than nine voting members."

As it existed prior to the 2004 amendments, 24 V.S.A. § 4461(b) (2003) allowed the legislative body of a municipality to appoint a ZBA, "where the planning commission does not serve as the board of adjustment," and to determine the number and terms of office of the ZBA members, subject to 24 V.S.A. § 4461(a) (2003), which provided that the ZBA "shall consist of not fewer than three nor more than nine persons, as the legislative body of the municipality determines . . . ." Section 4461(a) (2003) also provided that the ZBA "may consist of the members of the planning commission . . . or may include one or more members of the planning commission."

Prior to the 2004 amendments, the zoning administrator could hold any other office in the municipality. 24 V.S.A. § 4442(a) (2003). The equivalent provision in 24 V.S.A. § 4448(a) now specifies that the zoning administrative officer may not serve on the ZBA (or on the DRB in a municipality with a DRB).

When appointing a member to fill a vacancy of any of the three types of municipal panels (DRB, ZBA, or Planning Commission), the legislative body of the municipality is required to fill a vacancy "for the unexpired terms and upon the expiration of such terms." 24 V.S.A. § 4448(c). This provision carries forward the former

4

provisions regarding planning commissions, § 4323(a) (2003), and ZBAs, § 4461(a) (2003).

<u>History and Characterization of Plymouth Panel(s)</u>

The Selectboard of the Town of Plymouth created a five-member Planning Commission on April 3, 1967, and appointed specific persons as chair and for staggered terms for the four remaining slots. At that time, as the state statute provided for four-year terms for Planning Commission members, it was not necessary for the Selectboard to establish the length of the term of the Planning Commission members.

The first zoning ordinance was adopted in Plymouth in 1973. It appears to have provided for a Zoning Board of Adjustment, as the Selectboard appointed one later that year, but the Court has not been provided with the 1973 zoning ordinance. Without the ordinance, the Court cannot determine whether it provided for a specific number of members for the ZBA.

On August 27, 1973, the Selectboard appointed "all members of the Planning Board"[4] to serve on the Board of Adjustment, and also "appointed 3 new members to both Planning & Board of Adj[ustment] for [a] period of 3 years." This action resulted in both panels having eight members, with the same individuals serving on both panels.

It was customary for the Selectboard to make appointments to appointive town offices at its first regularly scheduled meeting after Town Meeting Day in early March. In the present appeal, the Court has not been provided with the appointments between 1973 and 2001, or with the zoning ordinances in effect prior to the 2007 Zoning Ordinance.

---

[4] The Court notes that in 1973, even before the "Board" of Adjustment was created, the Selectboard referred to the Planning Commission as the Planning "Board."

The parties do not dispute that the individuals appointed by the Selectboard to the Board of Adjustment since 1973 routinely performed the tasks assigned by the zoning ordinance to both the Planning Commission and to the ZBA.

Under the state statute (prior to the 2004 amendments, which first referred to the municipal bodies as "appropriate municipal panels"), in a town without a DRB, it was only the planning commission that had statutory authority to rule on applications for subdivision (in a town that had adopted subdivision regulations), 24 V.S.A. § 4415 (2003), or on applications for site plan approval, 24 V.S.A. § 4407(5) (2003). It was only the zoning board of adjustment that had statutory authority to rule on applications for conditional use approval. 24 V.S.A. § 4407(2) (2003).

At least as of its appointments in 2001, the Selectboard characterized its appointments as being to the "Zoning Board of Adjustment" without referring to whether the individuals appointed were also to serve as the Planning Commission, without referring to a specific length of term of office, and without referring to the total number of members of either the ZBA or a Planning Commission.

In 2001, the Selectboard appointed eight individuals to the "Zoning Board of Adjustment," including the person appointed as Zoning Administrator. In the correspondence and minutes of fifty-five meetings of the panel held between September of 2001 and February of 2009, the panel characterized itself variously as the "Planning and Zoning Commission," "Planning and Zoning Board," "Planning Commission/Zoning Board of Authority," "Plymouth Zoning Board," "Planning Commission/Board of Adjustment," "Zoning/Planning Board," and "Zoning and Planning Commission."

In 2002, the Selectboard appointed nine individuals to the "Zoning Board of Adjustment," and did not at that time appoint a Zoning Administrator. In 2003, the Selectboard appointed Jim Allen as Zoning Administrator, and appointed seven other individuals to the "Zoning Board of Adjustment." In 2004, Jim Allen was also a

6

member of the Selectboard, which appointed seven other individuals to the "Zoning Board of Adjustment," and did not mention an appointment as Zoning Administrator. Mr. Allen was appointed annually as Zoning Administrator from 2005 through 2008 and continued to serve as Zoning Administrator through at least the hearings on the present application.

In 2005, the Selectboard appointed the following seven individuals to the "Zoning Board of Adjustment": Tom Ellis (Chair), Karen Bruyn (Clerk), Virginia Kroitzsh, Jeff Sailer, John Wheeler, Taz Squire, and Allen Epstein. The cover page of the Town Plan, adopted by the Selectboard on December 5, 2005, states that it was "prepared by the Plymouth Planning Commission,"[5] with the assistance of the regional commission.

In early March of 2006, the Selectboard appointed the following six individuals to the "Zoning Board of Adjustment": Tom Ellis (Chair), Karen Bruyn (Clerk), Virginia Kroitzsh, Jeffrey Sailer, Allen Epstein, and Jim Rieger. The Selectboard appointed a seventh member to the "Plymouth ZBA," Betsy Tonkin, at its October 9, 2006 meeting. In 2007, the Selectboard appointed "all existing Town Offices for another term," which had the effect of reappointing the following panel members: Tom Ellis (Chair), Karen Bruyn (Clerk), Virginia Kroitzsh, Jeffrey Sailer, Allen Epstein, Jim Rieger, and Betsy Tonkin.

A Plymouth Zoning Ordinance was adopted on January 29, 2007, and an Interim Zoning Ordinance, incorporating revisions to comply with the National Flood Insurance Program, was adopted on October 22, 2007. The cover page of the Interim

---

[5] The parties have not provided the Court with any cover letter or minutes of the Planning Commission that would show the individuals who served on the Planning Commission that prepared the Town Plan, although no party disputes that the Planning Commission that prepared the Town Plan was composed of the same individuals who had been appointed by the Selectboard to the Zoning Board of Adjustment and who performed other Planning Commission functions under the Zoning Ordinance.

Zoning Ordinance states that it was "developed by the Plymouth Planning Commission,"[6] with assistance from the regional commission.

At the February 2008 initial hearing on the Gilmore Road, LLC application, the minutes are headed: "Plymouth Planning Commission" on one line and "Zoning Board of Adjustment" on a second line. The persons listed as being "Present for the Board" are Tom Ellis, Karen Bruyn, Jeff Sailer, Jim Rieger, Betsey Tonkin, Ginny Kroitszh, and Jim Allen. Allen Epstein did not participate in the February, June, or July 2008 hearings on Applicant's application.

On March 10, 2008, the Selectboard reappointed Tom Ellis (Chair), Karen Bruyn (Clerk), Virginia Kroitzsh, Jeffrey Sailer, Allen Epstein, and Jim Rieger to the "Zoning Board of Adjustment," but did not mention Betsy Tonkin. The omission may have been unintended, if the Selectboard was working from the March 2006 list of appointed town officers.

At the June 2008 hearing on the General Land application, the minutes are headed: "Plymouth Planning Commission/Zoning Board of Adjustment." The persons listed as being "Present for the Board" are Tom Ellis, Jeff Sailer, Jim Allen, Karen Bruyn, Jim Rieger, and Betsy Tonkin. Ms. Kroitszh had resigned. The minutes reflect that Tom [Ellis] opened the meeting and "announced the Board's practice to treat Jim Allen's membership as 'ex-officio' and as a non-voting member of the Planning Commission." The minutes also state that "[t]he Board will seek additional members."

---

[6] The parties have not provided the Court with any cover letter or minutes of the Planning Commission that would show the individuals who served on the Planning Commission that prepared the Zoning Ordinance, although no party disputes that the Planning Commission that prepared the Zoning Ordinance was composed of the same individuals who had been appointed by the Selectboard to the Zoning Board of Adjustment and who performed other Planning Commission functions under the Zoning Ordinance.

At the July 2008 hearing on the General Land application, the minutes are headed: "Plymouth Planning Commission/Zoning Board of Adjustment." The persons listed as being "Present for the Board" are Tom Ellis, Jeff Sailer, Betsy Tonkin, Karen Bruyn, Jim Allen, and Jim Rieger.

At the August 2008 hearing on the General Land application, the minutes are headed: "Plymouth Planning Commission/Zoning Board of Adjustment." The persons listed as being "Present for the Board" are Tom Ellis, Jeff Sailer, Betsy Tonkin, Jim Rieger, and Jim Allen.

At the September 2008 hearing on the General Land application, the minutes are headed: "Plymouth Planning Commission/ Zoning Board of Adjustment." The persons listed as being "Present for the Board" are Tom Ellis, Jim Rieger, Karen Bruyn, Jeff Sailer, Betsy Tonkin, and Jim Allen. The members voted unanimously to deny the application.

At no time during any of the proceedings on the General Land application did anyone raise any issue as to whether the panel was sitting as the Planning Commission, the ZBA, or both; as to whether Betsy Tonkin had been properly reappointed; or as to whether the 2005 Town Plan had been proposed to the voters by a properly constituted planning commission. A replacement for Ms. Kroitszh was not appointed by the Selectboard until after the September 2, 2008 hearing.

At least since the adoption of the 2007 zoning ordinance, which assigns at least planned unit development (§ 5.1) and conditional use approval (§ 4.16) to the Planning Commission, the panel members appointed by the Selectboard regularly and routinely performed the tasks assigned to both the Planning Commission and to the ZBA under the ordinance. The forms and fee schedule used by the panel are headed "Board of Adjustment/Planning Commission," although the area on the form for registering the panel's action refers only to the "Board of Adjustment" or "Board." The application requirements for conditional use approval or planned unit development refer only to

9

"the Planning Commission" or "the Commission." The minutes of the meetings are headed with the names of both bodies, and the written decisions are headed with the names of both bodies, regardless of whether the decision being made is one assigned under the ordinance to the Planning Commission or to the ZBA.

Amended Questions 1, 4, 5, and 8 – Legality of Planning Commission as of 2005 preparation of Town Plan through September 2008 action on Applicant's subdivision

In 1973, the Selectboard created a Zoning Board of Adjustment composed of the five members of the then-Planning Commission, and appointed three additional members to serve on both bodies. From that point forward the bodies sat in a single session at hearings and made decisions allocated by the state statute and by the zoning ordinance specifically to one or the other body. The Selectboard treated the bodies as a single body, and annually appointed individuals to a single body of seven members, which it referred to in its minutes from 2001 through 2008 as the Zoning Board of Adjustment. The body as so appointed did in fact perform the functions both of a Planning Commission and of a Zoning Board of Adjustment under the zoning ordinance.

Because the body sitting (unchallenged at the time of the hearings) to hear and decide Applicant's subdivision conditional use application acted promptly by taking a vote on the same day as closing the hearing, the deemed approval provisions of the statute do not result in deemed approval of the application, despite the irregularities of the Selectboard's appointment process. The purpose of deemed approval is "to remedy indecision and protracted deliberations . . . ," In re McEwing Services, LLC, 2004 VT 53, ¶ 21, 177 Vt. 38, but it must be narrowly applied to avoid results that are "wholly at odds with the zoning ordinance." In re Newton Enterprises, 167 Vt. 459, 465 (1998); see id. ("[W]e have strictly construed the [deemed approval] remedy to apply only when it

10

clearly implements the statutory purpose."). Because there was neither indecision nor protracted deliberation in the present case, deemed approval is not applicable.

Rather, the acts of the body sitting and acting as both the Planning Commission and as the ZBA, even if not properly appointed as the Planning Commission by the Selectboard, are valid by application of the de facto officer doctrine. As described by the United States Supreme Court:

> [t]he de facto officer doctrine confers validity upon acts performed by a person acting under color of official title even though it is later discovered that the legality of that person's appointment . . . to office is deficient.

Nguyen v. United States, 539 U.S. 69, 77 (2003) (citing Ryder v. United States, 515 U.S. 177, 180 (1995)).

The Vermont Supreme Court has applied the doctrine in cases in which an officer is "in the unobstructed possession of an office and discharging its duties in full view of the public, in such manner and under such circumstances as not to present the appearance of being an intruder or usurper." State v. Oren, 160 Vt. 245, 247 (1993) (quoting Waite v. Santa Cruz, 184 U.S. 302, 323 (1902)). See also In re G.V., 136 Vt. 499, 501–02 (1978) ("[A]n officer coming into possession of his office under the forms of law and assuming to act under a proper commission is a de facto officer whose acts are binding as to third persons, despite some infirmity in the qualifications of the officer.").

When applying the doctrine, other courts have placed particular importance on an officer's or board or commission member's exercise of apparent authority and the public's acquiescence to that discharge of authority. See, e.g., Equal Employment Opportunity Comm'n v. Sears, Roebuck and Co., 650 F.2d 14, 17 (2d. Cir. 1981) ("The doctrine has generally been applied to individuals who are in possession of an office, are performing the duties of the office, and who maintain an appearance of right to the office."); In re Bunker Hill Urban Renewal Project 1B of Community Redevelopment Agency of City of Los Angeles, 389 P.2d 538, 552 (Cal. 1964) ("Persons claiming to be

11

public officers while in possession of an office, ostensibly exercising their functions lawfully and with the acquiescence of the public, are de facto officers.").

The Vermont Supreme Court has recognized the importance of this doctrine to the public interest in the stable functioning of government, stating that the doctrine operates to "protect the public's reliance on an officer's authority and to ensure the orderly administration of government by preventing technical challenges to an officer's authority." Oren, 160 Vt. at 247. Ultimately, the doctrine "springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question . . . ." Ryder v. United States, 515 U.S. at 180. It is particularly important in a field such as municipal zoning and planning, in which many selectboards, as well as many planning commissions and zoning boards, are composed of volunteer citizens who are carrying out their duties without professional assistance. See Leo's Motors, Inc. v. Town of Manchester, 158 Vt. 561, 564 (1992) (discussing the "informality that often typifies municipal proceedings"); In re Appeal of Leikert, No. 2004-213, slip op. at 4 (Vt. Nov. 10, 2004) (unpublished mem.) ("We recognize that developmental review boards are often made up mostly of lay people, many of whom have limited experience or training in adjudicative matters.").

In this case, the members of the municipal panel were carrying out the function (and operating under the name) of both the Planning Commission and the ZBA under color of an official appointment, and with the acquiescence of the public. Their action in carrying out a Planning Commission function was valid in the present case under the de facto officer doctrine.

<u>Amended Questions 2, 3, and 9 – Legality of adoption of 2005 Town Plan and 2007 Zoning Ordinances</u>

Because the Planning Commission was in <u>de facto</u> existence when it developed and recommended the 2005 Town Plan for adoption, and because it was in <u>de facto</u> existence as of preparation and adoption of the 2007 Zoning Ordinance (and the Interim Ordinance later in 2007), all three of those documents were properly adopted and cannot now be challenged based on the irregularities of appointment of the Planning Commission.

Even without the <u>de facto</u> officer doctrine, the 2005 Town Plan cannot now be challenged for the purported procedural defect of having been prepared by a Planning Commission whose members were improperly appointed by the Selectboard, as this challenge is made more than two years from the date of the Plan's adoption. 24 V.S.A. § 4483(b) ("No person shall challenge for purported procedural defects[7] the validity of any plan . . . after two years following the day on which it would have taken effect if no defect had occurred.").

<u>Amended Question 11 –   Authority to Consider Landscaping, Screening, Setbacks</u>

The authority to consider issues of landscaping, screening, and setbacks is found in the conditional use standards in § 4.16.2(c), which incorporate a site plan standard, as allowed by 24 V.S.A. § 4414(3)(B)(iv).  That provision states that conditional use standards may include requirements with respect to "[c]riteria adopted relating to site plan review pursuant to [24 V.S.A. §] 4416."

Plymouth has not adopted a subdivision ordinance or a section of the zoning ordinance setting out subdivision standards pursuant to 24 V.S.A. § 4418.  Instead,

---

[7] The limitation in § 4483(a), covering only "minor or nonessential particulars," does not apply once the two years has elapsed.

subdivisions are allowed in the RD5 district as a conditional use. Until the statutory changes effective July 1, 2004, it was only the ZBA (in towns without a development review board) that had authority to rule on conditional use approval.

The 2007 Plymouth Zoning Ordinance assigns the conditional use approval task to the Planning Commission. Regardless of whether the Planning Commission was allowed to exercise this function prior to the 2004 statutory amendments, under the statute in effect in 2007, including the definition of "appropriate municipal panel," a town is not precluded from assigning the Planning Commission to perform a function formerly only assigned to the ZBA. 24 V.S.A. §§ 4303(3), 4460(e).

Amended Question 13 – Affordable Housing

Applicant has raised the question of whether the application was deficient for failure to include "affordable housing." As noted by the Town, this question does not extend to raise the issue of the degree to which § 4.16.2(g) incorporates by reference any provisions of the Town Plan. In any event, material facts are in dispute as to Amended Question 13, as the parties have not provided the Court with the application. However, the parties should be prepared to discuss the scope of § 4.16.2(g) at the conference that has been scheduled in this matter.

The Plymouth Selectboard has, over the years, failed to follow the requirements of the state zoning enabling statute by failing to establish the length of term and number of members of the Planning Commission and of the ZBA, and by failing to make clear in the minutes of the Selectboard meetings that members were being appointed concurrently to serve on both bodies. However, as discussed above, this failure does not retroactively invalidate the actions taken by either body, as the members of the Planning Commission/ZBA were acting as de facto officers under color of law and

14

without challenge. It will be up to the Selectboard to make corrections for the future, and to determine whether it wishes instead to have a DRB to perform the regulatory functions of both bodies, while maintaining a separate Planning Commission (with the same or different membership) to perform its planning functions.

Similarly, the members of the Plymouth Planning Commission/ZBA, at least with respect to the present application, have not followed the requirements of the Plymouth Zoning Ordinance to issue a separate decision of the Planning Commission. § 4.14. This requirement applies even in instances in which the two bodies are holding a combined hearing on a project that requires review from both bodies, for example, conditional use review and a variance. § 4.14. It will be up to the members of each body in the future, whether or not both bodies are composed of the same individuals, to specify whether any particular hearing or portion of a hearing is being held by the Planning Commission, the Zoning Board of Adjustment, or jointly by both bodies under the provisions of § 4.14.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Town's Motion to Dismiss is GRANTED as to Amended Question 16, and is otherwise DENIED. Summary judgment is DENIED as to Amended Question 13, as material facts are in dispute, or at least have not been provided to the Court. Otherwise, the Town's Motion for Summary Judgment is GRANTED, and Appellant-Applicant's Motion for Summary Judgment is DENIED, as to Questions 1, 2, 3, 4, 5, 8, 9, and 11.

This decision leaves Amended Questions 6, 10, 12, 14, 13, 15, and 17 of the Statement of Questions to be resolved on the merits. A telephone conference has been scheduled (see enclosed notice), to discuss the timing of mediation, and trial. Please be prepared to discuss the parties' positions as to the degree to which § 4.16.2(g)

incorporates by reference any provisions of the Town Plan, to resolve that issue prior to the parties' preparing for trial.

Done at Berlin, Vermont, this 11th day of September, 2009.

_____
Merideth Wright
Environmental Judge